IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| XTC CABARET (DALLAS) INC. D/B/A | § | |
| XTC CABARET et al. | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00042-B |
| | § | |
| THE CITY OF DALLAS TEXAS et al., | § | |
|     Defendants. | § | |

## <u>DEFENDANT CITY OF DALLAS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER</u>

TAMMY L. PALOMINO
Dallas City Attorney

Kathleen M. Fones
Assistant City Attorney
Texas Bar No. 24050611
kathleen.fones@dallas.gov

Stacy Jordan Rodriguez
Texas Bar No. 11016750
Assistant City Attorney
stacy.rodriguez@dallas.gov

City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
214-670-3519 / fax 214-670-0622

Attorneys for Defendant City of Dallas

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ...............................................................................................................1

LEGAL STANDARD...........................................................................................................2

ARGUMENT AND AUTHORITIES .................................................................................3

    I.    Plaintiffs Cannot Demonstrate a Substantial Likelihood of Success on the Merits of Their Claims Because They Have Failed to Plead a *Monell* Claim. ................. 3

        A.    Plaintiffs fail to allege a culpable act by the City's policymaker. .............. 4

        B.    Plaintiffs fail to allege any constitutional violation. .................................. 5

                1.    First Amendment ........................................................................ 5

                2.    Fourth Amendment ...................................................................... 7

                3.    Fifth and Fourteenth Amendments ................................................ 9

        C.    Plaintiffs' assertions of a dispute about the interpretation of City ordinances do not assert a claim to support issuance of relief. ................ 12

    II.    Plaintiffs Cannot Demonstrate a Substantial Threat of Irreparable Injury. .......... 13

    III.    Plaintiffs Cannot Show That Their Threatened Injury Outweighs the Harm the TRO Will Cause to the City.......................................................................... 13

    IV.    Granting the Requested TRO Will Impair the Public Interest by Preventing Enforcement of Chapter 41A of the Dallas City Code. ........................................ 14

CONCLUSION....................................................................................................................16

CERTIFICATE OF SERVICE .........................................................................................16

i

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
   300 U.S. 227 (1937) ............................................................................................ 13

*Albright v. Oliver*,
   510 U.S. 266 (1994) ......................................................................................... 9, 10

*Apple Barrel Prods., Inc. v. Beard*,
   730 F.2d 384 (5th Cir. 1984) ............................................................................... 3

*Ass'n of Club Executives v. City of Dallas*,
   83 F.4th 958 (5th Cir. 2023) ...................................................................... passim

*Bd. of County Comm'rs of Bryan Cnty. v. Brown*,
   520 U.S. 397 (1997) ............................................................................................. 4

*City of Los Angeles v. Alameda Books, Inc.*,
   535 U.S. 425 (2002) ............................................................................................. 5

*City of Renton v. Playtime Theatres, Inc.*,
   475 U.S. 41 (1986) ........................................................................................... 5, 6

*Cox v. City of Dallas*,
   430 F.3d 734 (5th Cir. 2005) ............................................................................... 4

*Dallas v. Stanglin*,
   490 U.S. 19 (1989) ............................................................................................... 7

*Darby v. Pasadena Police Dep't*,
   939 F.2d 311 (5th Cir. 1991) ............................................................................... 1

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012 .............................................................................. 10

*Dilworth v. Riner*,
   343 F.2d 226 (5th Cir. 1965) ............................................................................... 2

*Dusenberry v. United States*,
   534 U.S. 161 (2002) ............................................................................................. 9

*Edwards v. Balisok*,
   520 U.S. 641 (1997) ............................................................................................. 8

*Energy Mgmt. Corp. v. City of Shreveport*,
   467 F.3d 471 (5th Cir. 2006) ............................................................................. 11

*Enterprise Intern. v. Corporacion Estatal Petrolera Ecuatoriana,*
    762 F.2d 464 (5th Cir. 1985) ................................................................... 3

*FM Props. Operating Co. v. City of Austin,*
    93 F.3d 167 (5th Cir. 1996) .................................................................... 11

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................... 10

*Groden v. City of Dallas*,
    826 F.3d 280 (5th Cir. 2016) ..................................................................... 4

*Hassani v. Napolitano,*
    No. CIV. A 3:09-CV-1201-D, 2009 WL 2044596 (N.D. Tex. July 15, 2009).......................... 2

*Heck v. Humphrey,*
    512 U.S. 477 (1994)................................................................................... 8

*James v. Hegar,*
    86 F.4th 1076 (5th Cir. 2023) .................................................................... 8

*Klumb v. Hous. Mun. Emp. Pension Sys.*,
    458 S.W.3d 1 (Tex. 2015)......................................................................... 10

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) .................................................................... 3

*Maryland v. King*,
    567 U.S. 1301, (2012)............................................................................... 14

*Monell v. Dep't of Soc. Servs*.,
    436 U.S. 658 (1978).................................................................................. 3

*Patel v. Tex. Dep't of Licensing & Regulation,*
    469 S.W.3d 69 (Tex. 2015)......................................................................... 9

*Phillips v. Dall. Cnty. Sheriff's Dep't,*
    No. 3:16-CV-2680-D, 2017 WL 658749 (N.D. Tex. Jan. 12, 2017),
    *report and recommendation adopted,*
    No. 3:16-CV-2680-D, 2017 WL 635086 (N.D. Tex. Feb. 16, 2017) ........................................ 1

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ................................................................. 3, 4

*Rakas v. Illinois*,
    439 U.S. 128 (1978).................................................................................. 7

*Reid v. Aransas County*,
    805 F. Supp. 2d 322 (S.D. Tex. 2011) ..................................................... 13

*Shelton v. City of College Station*,
    780 F.2d 475 (5th Cir. 1986) ..................................................... 10

*Simi Inv. Co. v. Harris Cnty.*,
    236 F.3d 240 (5th Cir. 2000) ..................................................... 11

*Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*,
    647 S.W.3d 648 (Tex. 2022) ...................................................... 10

*United States v. Flowers*,
    6 F.4th 651 (5th Cir. 2021) ......................................................... 7

*Valle v. City of Houston*,
    613 F.3d 536 (5th Cir. 2010) ....................................................... 3

*Veasey v. Abbott*,
    870 F.3d 387 (5th Cir. 2017) ..................................................... 14

*Virginia v. American Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1988) .................................................................... 6

*Wallace v. Kato*,
    549 U.S. 384 (2007) .................................................................... 8

*Walters v. Nat'l Ass'n of Radiation Survivors*,
    468 U.S. 1323 (1984) ................................................................ 14

*Webster v. City of Houston*,
    735 F.2d 838 (5th Cir. 1984) ....................................................... 4

*White v. Carlucci*,
    862 F.2d 1209 (5th Cir. 1989) ..................................................... 3

*Zarnow v. City of Wichita Falls*,
    614 F.3d 161 (5th Cir. 2010) ....................................................... 4

**Constitutional Provisions**

U.S. Const. amend. IV .................................................................... 7

**Statutes**

Tex. Loc. Gov't Code § 243.007 ..................................................... 11

Tex. Loc. Gov't Code § 243.010 .................................................. 2, 11

**Ordinances**

Dallas, Tex., Code § 41A-2(31) ..................................................... 12

Dallas, Tex., Code § 41A-4(e) .................................................................................. 12

Dallas, Tex., Code §§ 41A-9 ................................................................................... 11

Dallas, Tex., Code § 41A-10 .................................................................................. 12

Dallas, Tex., Code § 41A-14.3 ............................................................................... 15

Dallas, Tex., Code § 41A-21 ............................................................................ 2, 11

**Rules**

Fed. R. Civ. P. 65 .................................................................................................. 14

## DEFENDANT CITY OF DALLAS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Defendant, City of Dallas ("the City") files this Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order ("TRO") and Brief in Support. The City asks the Court to deny the TRO.[1]

## INTRODUCTION

This lawsuit is an obvious attempt by Plaintiffs to avoid the impact of the Fifth Circuit's recent decision in *Association of Club Executives v. City of Dallas*, 83 F.4th 958 (5th Cir. 2023), which vacated a preliminary injunction issued by another judge in the Northern District of Texas and allowed section 41A-14.3 of the Dallas City Code (the "Ordinance"), a City ordinance that places restrictions on the hours of operation for businesses licensed as sexually-oriented businesses, to go into effect. 83 F.4th at 970. Faced with the need to comply with the Ordinance, Plaintiffs now seek to have this Court direct the City that its police officers must interpret the Dallas City Code so that enforcement of chapter 41A depends not on whether a business holds a license under that chapter but instead on the activity being conducted on the premises at any given time – that is, to enforce or not enforce chapter 41A through a purely content-based test. Moreover, they ask for an order that the police cannot monitor or conduct any enforcement activity to ensure that Plaintiffs are in fact doing the activities they claim to be doing at any given time or to enforce chapter 41A through criminal prosecution of individuals violating that chapter as allowed under

---

[1] Although Plaintiffs also purport to bring claims against the Dallas Police Department ("DPD"), DPD is a nonjural entity that has not been granted a separate capacity to sue and be sued from the City. *See, e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) (government subdivision cannot engage in litigation unless "true political entity has taken explicit steps to grant the servient agency with jural authority"); *Phillips v. Dall. Cnty. Sheriff's Dep't*, No. 3:16-CV-2680-D, 2017 WL 658749, at *2 (N.D. Tex. Jan. 12, 2017), *report and recommendation adopted*, No. 3:16-CV-2680-D, 2017 WL 635086 (N.D. Tex. Feb. 16, 2017) (§ 1983 claims against DPD dismissed because it is nonjural entity). Therefore, DPD is not a proper defendant here that can be sued separately from the City itself, and the City's responds for itself as well as DPD as a servient, nonjural agency.

the Dallas City Code and state law, *see* Dallas, Tex., Code § 41A-21; Tex. Loc. Gov't Code § 243.010.

To justify these requests, the lawsuit purports to bring claims under 42 U.S.C. § 1983 and the Declaratory Judgment Act for violations of the First, Fourth, Fifth, and Fourteenth Amendments based on the police officers' interpretation and enforcement of the Ordinance as well as other provisions of chapter 41A. Plaintiffs, however, have made no attempt to plead a proper claim against the City under *Monell*. Plaintiffs, therefore, cannot demonstrate a likelihood of success on the merits.

Plaintiffs also have failed to show a "substantial threat of irreparable harm" or that such an injury would outweigh the harm to the City if their requested TRO is granted. The TRO requested goes well beyond the scope of preserving the status quo and instead asks for this Court to upend the status quo by restricting the DPD's ability to enforce the law, which impairs the public interest. For these reasons, the City respectfully requests that Plaintiffs' motion for TRO be denied.

## LEGAL STANDARD

When an opposing party is provided notice of a motion for TRO, as here, the procedure that follows does not functionally differ from that of an application for preliminary injunction. *See Dilworth v. Riner*, 343 F.2d 226, 229 (5th Cir. 1965). Consequently, "[t]o obtain a TRO, an applicant must demonstrate entitlement to a preliminary injunction." *Hassani v. Napolitano*, No. CIV. A 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Id.*

"In order for a preliminary injunction to issue, the movant must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage

that the injunction will cause to the adverse party; and (4) that the injunction will not disserve the public interest." *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991). "In order to obtain preliminary injunctive relief, the movant must carry the burden of persuasion on each of the elements of the four prong test." *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 389 (5th Cir. 1984).

Finally, "[i]n considering whether to grant or deny preliminary injunctive relief, the district court must remember that a preliminary injunction is an extraordinary and drastic remedy, and that the movant has a heavy burden of persuading the district court that all four elements are satisfied." *Enterprise Intern. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (internal quotations and citations omitted); *see also White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (A preliminary injunction is "not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.").

## ARGUMENT AND AUTHORITIES

**I.**   **Plaintiffs Cannot Demonstrate a Substantial Likelihood of Success on the Merits of Their Claims Because They Have Failed to Plead a *Monell* Claim.**

A municipality does not incur § 1983 liability for an injury caused solely by its employees, and therefore, it cannot be held liable based on a theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). The bar on vicarious liability means that a municipality can only be liable when it causes the constitutional violation by the execution of the municipality's official policy or custom. *Monell*, 436 U.S. at 694; *Valle*, 613 F.3d at 541; *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Moreover, to impose liability on a municipality, a § 1983 plaintiff must establish both the causal link (that the policy is the "moving force" behind the constitutional violation) and the municipality's degree of culpability ("deliberate indifference" to the known or obvious

3

consequences of the municipality's unconstitutional policy). *Bd. of County Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997).

Accordingly, a valid *Monell* claim must allege facts that show the following three elements in addition to the underlying claim of a violation of rights: "(1) a policymaker; (2) an official policy; and (3) a violation of a constitutional right whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Piotrowski*, 237 F.3d at 578. Proof of all three attribution principles is necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself, and to avoid municipal liability claims collapsing into *respondeat superior* liability. *Piotrowski*, 237 F.3d at 578; *see also Brown*, 520 U.S. 397 at 415; *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010).

### A.    Plaintiffs fail to allege a culpable act by the City's policymaker.

For purposes of § 1983, a policymaker is one who takes the place of the governing body in a designated area of city administration. *Zarnow*, 614 F.3d at 166 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). While the operative pleading need not supply an answer to the legal question of the specific identity of the city's policymaker, Plaintiffs still must plead some facts establishing that the alleged policy was promulgated or ratified by the City's final policymaker. *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016).

Under Texas law, the final policymaker for the City is the Dallas City Council. *See id*. at 286. In the current case, Plaintiffs make no attempt to allege that the Dallas City Council took any official action that infringed their rights. Plaintiffs here do not challenge any ordinance as facially invalid or otherwise seek to challenge any policy promulgated or ratified by the Dallas City Council. Notably, litigation challenging the Ordinance is already pending in this district in Cause No. 3:22-cv-00177-M, and one of the Plaintiffs here, Silver City Cabaret, is also a plaintiff in that

4

case. Furthermore, the Fifth Circuit has already determined in that case that the plaintiffs did not

meet their burden for preliminary injunctive relief as to the Ordinance. *Ass'n of Club Executives*,

83 F.4th at 970. Therefore, instead of attacking the Ordinance directly, Plaintiffs here point only

to the actions of individual police officers attempting to enforce the Ordinance and other provisions

of chapter 41A of the Dallas City Code. Therefore, Plaintiffs have failed to allege an official policy

promulgated or ratified by the City's final policymaker.

### B.      Plaintiffs fail to allege any constitutional violation.

More importantly, Plaintiffs have failed to sufficiently allege any constitutional violation,

much less one whose moving force is a policy or custom promulgated or ratified by the Dallas

City Council. In their motion for TRO, Plaintiffs focus on allegations about enforcement of the

Ordinance by Dallas police officers but fail to set out the basis for the constitutional claims that

purportedly entitle them to a temporary restraining order, and therefore, the City will primarily

refer back to the complaint as to the basis for those claims.

### 1.      First Amendment

In the complaint, Plaintiffs state that the City has violated their right to free expression and

association. (ECF 1 at 10.) Notably, as to the free expression claim, XTC Cabaret, Silver City

Cabaret, and Tiger Cabaret (the "SOB Plaintiffs") assert that they are protected because they "offer

protected expression, *i.e.*, erotic dancing." *Id.* Contradictorily, however, the SOB Plaintiffs claim

that they should not be subjected to the hours of operation requirements of chapter 41A because

they are *not* offering erotic dancing after 2:00 a.m. (*See, e.g.*, ECF 8 at 3, 11, 5.) As discussed

above, the Fifth Circuit has already determined that the direct First Amendment challenge to the

ordinance does not have a likelihood of success on the merits under the standards for evaluating a

First Amendment challenge under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)

and *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002). *Ass'n of Club Executives*,

83 F.4th at 970. As the Fifth Circuit set out in its decision, the second part of the test set out in
*Renton* directs courts to determine "whether the regulation is 'designed to combat the undesirable
secondary effects' of 'businesses that purvey sexually explicit materials' rather than to restrict
their 'free expression.'" *Id.* at 963 (quoting *Renton*, 475 U.S. at 48-49). The SOB Plaintiffs' claim
seems to turn this standard on its head and demand that the City regulate them only when they are
engaged in the protected activity of exotic dancing but not when they claim to be engaged in other
activities such as operating a restaurant. Therefore, Plaintiffs have not alleged any claim for a
violation of their First Amendment right to free expression and cannot demonstrate a likelihood of
success on the merits for such a claim. Indeed, to the contrary, Plaintiffs ask this Court to issue a
TRO that would require the City enforce the Ordinance based exclusively on the content of the
SOB Plaintiffs' expressive activity or lack thereof.

The enforcement actions alleged by the SOB Plaintiffs also do not violate any right of
association. In their complaint, the SOB Plaintiffs assert that they "have standing to assert First
Amendment rights of their patrons generally," but the cited case, *Virginia v. American Booksellers
Ass'n, Inc.*, 484 U.S. 383 (1988), specifically addresses constitutionally protected speech or
expression, not association. 484 U.S. at 392-93. Furthermore, the claim is purportedly based on a
"pervasive presence of uniform officers and patrol vehicles on the business's property," but the
only allegation of a police raid or police presence generally in the complaint or the TRO motion is
at Malibu, which is not a plaintiff in this action (*see generally* ECF 1; ECF 8), and the SOB
Plaintiffs have not pled any basis for them to have third-party standing to assert a claim on behalf
of Malibu's customers. Assuming, however, the SOB Plaintiffs could bring a claim for violation
of their customers' right of association, their claim fails because there is no "generalized right of
'social association' that includes chance encounters in dance halls" (or restaurants). *Dallas v.*

6

*Stanglin*, 490 U.S. 19, 28 (1989). Therefore, the SOB Plaintiffs have not alleged any basis for a First Amendment right of association claim and cannot demonstrate a likelihood of success on the merits for any such claim.

### 2.     Fourth Amendment

Similar to their First Amendment right of association claim, the SOB Plaintiffs assert that they have standing to assert a Fourth Amendment claim on behalf of their "patrons, guests, workers, and visitors" to be free from "the chilling effect of having to walk through a crowd of armed law enforcement officers to reach the business." (ECF 1 at 11.) As noted above, however, the only allegations relating to a police raid or police presence generally in the complaint or the TRO motion relate to one action at Malibu, not at any of the SOB Plaintiffs. (*See generally* ECF 1; ECF 8.) Furthermore, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969).

Moreover, the SOB Plaintiffs have not alleged a Fourth Amendment violation based simply on a purported police presence in a public place. "The Fourth Amendment prohibits 'unreasonable searches and seizures.'" *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021) (citing U.S. Const. amend. IV). "A seizure occurs when, under the totality of the circumstances, a law enforcement officer, by means of physical force or show of authority, terminates or restrains a person's freedom of movement." *Id.* at 655. With respect to a search or seizure of materials, a plaintiff must show it was subjected to a search or seizure of material in which they have a legitimate expectation of privacy. *Rakas*, 439 U.S. at 143-44. Other than with the arrests of Plaintiffs Tirado, Nero, and Bothmann (the "Individual Plaintiffs"), discussed in more detail below, Plaintiffs do not allege any search or seizure. Moreover, they do not allege any legitimate

expectation of privacy in the public areas of businesses open to the general public. Therefore, the SOB Plaintiffs have not alleged any basis for a Fourth Amendment claim and cannot demonstrate a likelihood of success on the merits for any such claim.

The Individual Plaintiffs allege that DPD violated their rights "by arresting them for engaging in lawful activity." (ECF 1 at 11.) The Individual Plaintiffs, however, have not alleged that the criminal case (or likelihood of a criminal case) has ended. "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id.* at 394 (citing *Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). That is, until the Individual Plaintiffs can show that their criminal cases have ended without a conviction, any claim for false arrest should be stayed. Furthermore, even if the false arrest claims could be pursued at this time, "allegations of past harm cannot establish standing for a request for prospective relief." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023). Allegations that the Individual Plaintiffs were purportedly wrongfully arrested for violation of the Ordinance do not establish standing for a claim to enjoin enforcement of the Ordinance going forward.

### 3.     Fifth and Fourteenth Amendments

With respect to Plaintiffs' due process claims under the Fifth and Fourteenth Amendments,[2] Plaintiffs allege that Defendants' "actions are an arbitrary and capricious abuse of rulemaking authority that shocks the conscience and bears no reasonable relationship to any governmental interest" and that those actions "violate[] Plaintiffs' right to use their property and conduct private business as guaranteed by the Federal and Texas Bills of Rights." (ECF 1 at 12.) Plaintiffs also assert that there is "no statutory basis (under the Texas Penal Code or otherwise) to threaten arrest of Plaintiffs' representatives and employees or close the Plaintiffs' operations (pursuant to [chapter] 41A of the Dallas City Code or otherwise)." (*Id.*)

With respect to Plaintiffs' Fifth Amendment due process claim, the due process clause of the Fifth Amendment applies only to the federal government. *See, e.g.*, *Dusenberry v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). As to their Fourteenth Amendment due process claim, a substantive due process claim under the Fourteenth Amendment is limited to those where there is no specific protection in the Bill of Rights. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not

---

[2] In their complaint, Plaintiffs also purport to assert a claim under the Texas due course of law clause. (ECF 1 at 11-12.) Although, under *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69 (Tex. 2015), there are some differences between the standards for a due process claim under the U.S. Constitution and a due course of law claim under the Texas Constitution, that case relates to a direct challenge of a statute, but Plaintiffs have specifically disavowed any direct challenge to the Ordinance in this case. Furthermore, Plaintiffs have not pled facts to require this Court to conduct a different analysis under the due course of law provision than the due process clause.

the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Assuming, however, Plaintiffs could pursue a generalized substantive due process claim, they cannot establish a substantial likelihood of success on the merits of such a claim. First, to succeed on such a claim, a plaintiff must establish a constitutionally protected property interest. *See Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir. 1986) ("Deprivation by the state of a protected interest in life, liberty, or property is prerequisite to a claim for denial of due process."). What constitutes a protected property interest is defined by state law. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). The Texas Supreme Court has held that "[a] constitutionally protected right must be a vested right, which is 'something more than a mere expectancy based upon an anticipated continuance of an existing law.'" *Klumb v. Hous. Mun. Emp. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). Plaintiffs allege a general "right to use their property and conduct private business." (ECF 1 at 12; *see also* ECF 8 at 8 ("Businesses have a right to transact lawful business.").) Texas law, however, does not recognize such a general right, but instead recognizes that certain occupational interests exist subject to the government's ability to impose and change regulations, including for businesses operated through a government license. *See Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 654-56 (Tex. 2022).[3]

Additionally, for claims of substantive due process violations relating to an ordinance, a "court reviews [the city's] actions 'against the deferential "rational basis" test that governs

---

[3] To the extent that Plaintiffs allege a protected right under the First Amendment based on the fact that their business offers exotic dancing, that would not qualify as a separate claim under *Albright v. Oliver*, and as discussed above, the assertion here is that Plaintiffs require a TRO to allow them to operate because they are *not* offering exotic dancing at certain times and, therefore, should not be subject to the requirements of the Ordinance at those times.

substantive due process.'" *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 481 (5th Cir. 2006) (quoting *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000)). If a Plaintiff can first establish a constitutionally protected property right, "the next step in the substantive due process inquiry is whether the action is rationally related to a legitimate government interest." *Simi*, 236 F.3d at 250-51 (citing *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)). "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Id.* (alteration in original). Here, the Fifth Circuit has already determined that there is a substantial likelihood that the City can establish a substantial governmental interest for enacting the Ordinance. *Ass'n of Club Executives*, 83 F.4th at 969. It is not clear, however, how the City could have a substantial governmental interest in enacting the Ordinance but not in enforcing it.

Furthermore, Plaintiffs' assertion that there is no statutory basis for threatening arrest or closure of a business for violations of chapter 41A of the Dallas City Code is incorrect. Section 41A-21(a) of the Dallas City Code states that if "a person does an act that is forbidden, fails to perform an act that is required, or commits an act that is made an offense by any provision of this chapter, the violation is punishable as provided by Section 243.010(b) of the Texas Local Government Code, as amended." Dallas, Tex., Code § 41A-21(a). That statute provides that a person who violates a municipal or county regulation relating to sexually-oriented businesses commits a Class A misdemeanor. Tex. Loc. Gov't Code § 243.010(b). The Texas Local Government Code also authorizes municipalities to require licenses to operate sexually-oriented businesses and that local regulations may provide for the denial, suspension, or revocation of such a license. *Id.* § 243.007(a), (b); *see also* Dallas, Tex., Code §§ 41A-9 (suspension of licenses),

41A-10 (revocation of licenses). Plaintiffs do not allege that these statutes or ordinances are unconstitutional or a violation of due process, and their assertions that DPD officers should not be allowed to enforce them do not rise to the level of a due process violation. Therefore, Plaintiffs have not demonstrated a substantial likelihood of success on the merits as to their due process claims.

### C.   Plaintiffs' assertions of a dispute about the interpretation of City ordinances do not assert a claim to support issuance of relief.

Although Plaintiffs' complaint purports to be about alleged constitutional violations, Plaintiffs' claims are more accurately described as an attempt to have this Court mediate a dispute between Plaintiffs and police officials as to the proper interpretation of the Dallas City Code. Specifically, Plaintiffs assert that, in the definition of "sexually oriented business" in chapter 41A, the phrase "primary business" refers only to the primary business of a licensed sexually-oriented business at any given hour (*see, e.g.*, ECF at 7) rather than its primary business generally, *i.e.*, the business for which it has obtained a license under chapter 41A. *See* Dallas, Tex., Code § 41A-2(31). Plaintiffs also appear to seek an interpretation of section 41A-4(e), which states, "A person who operates a sexually oriented business and possesses a dance hall license shall comply with the requirements and provisions of this chapter as well as the requirements and provisions of Chapter 14 of this code when applicable." Dallas, Tex., Code § 41A-4(e). Plaintiffs interpret this provision to mean that they can choose the least restrictive requirement and follow it while ignoring more restrictive requirements and provisions in chapter 41A.

Plaintiffs apparently seek to have this Court interpret the Dallas City Code under the Federal Declaratory Judgment Act, asserting in their complaint that "Plaintiffs are entitled to have this Court declare the rights and legal relations of Plaintiffs and Defendants with respect to the relevant provisions of the Dallas City Code, Texas law, and the U.S. Constitution." (ECF 1 at 13.)

12

The Federal Declaratory Judgment Act, however, is merely procedural and does not create any substantive federal claims. *See, e.g.*, *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *Reid v. Aransas County*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011). Because as discussed above, there is no basis for any of Plaintiffs' constitutional claims, there is no basis for Plaintiffs' request that this Court overrule the interpretation of Dallas police officers in favor of their own, and such a claim cannot serve as the underlying claim for Plaintiffs' request for TRO.

\* \* \*

Ultimately, as discussed above, Plaintiffs have not established a substantial likelihood of success on the merits as to any of their claims, and therefore, they are not entitled to a temporary restraining order.

## II.     **Plaintiffs Cannot Demonstrate a Substantial Threat of Irreparable Injury.**

Plaintiffs argue they will suffer irreparable injury without the TRO because "the loss of constitutional freedoms, for even minimal periods of time constitutes irreparable injury" and "businesses have a right to transact lawful business." (ECF 8 at 8-9.) As explained above, however, Plaintiffs' constitutional rights are not violated by the enforcement of the Ordinance. The Fifth Circuit has analyzed the Ordinance and allowed it to go into effect, *Ass'n of Club Executives*, 83 F.4th 958, and Plaintiffs' attempts to prevent DPD officers from enforcing the Ordinance now that it has gone into effect are not supportable. Therefore, Plaintiffs cannot demonstrate that they will suffer irreparable injury if the TRO is denied.

## III.    **Plaintiffs Cannot Show That Their Threatened Injury Outweighs the Harm the TRO Will Cause to the City.**

Conversely, if the TRO is granted, the City will undoubtedly suffer significant harm. Any time a governmental entity is enjoined by a court from effectuating the laws enacted by representatives of its people, the governmental entity suffers a form of irreparable injury. *See*

13

*Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (citing *Maryland v. King*, 567 U.S. 1301, (2012); *Walters v. Nat'l Ass'n of Radiation Survivors*, 468 U.S. 1323, 1324 (1984)). The Ordinance has already survived preliminary review by the Fifth Circuit, which has determined that "the City is substantially likely to show that the Ordinance was 'designed to further a substantial government interest' under *Renton*." *Ass'n of Club Executives*, 83 F.4th at 969. Granting the TRO would prevent the City from enforcing the Ordinance despite the Fifth Circuit's determination because Plaintiffs disagree with the interpretation of the Ordinance and chapter 41A by DPD officers. Thus, the City's harm flowing from the grant of the TRO clearly outweighs any harm Plaintiffs might suffer by enforcement of the Ordinance if the TRO is denied.

**IV.     Granting the Requested TRO Will Impair the Public Interest by Preventing Enforcement of Chapter 41A of the Dallas City Code.**

Plaintiffs argue that "an injunction will not significantly burden any of the Defendants' interests because nothing in the injunction in any way inhibits Defendants' legal law enforcement function." (ECF 8 at 9.) This contention, however, is not supported by the language of the requested TRO. To the contrary, Plaintiffs seek an order that would prohibit DPD officers from: (1) "arresting any employee or representative of Plaintiffs' establishments for conducting Operations," (2) "maintaining a physical presence at the Plaintiffs' establishments or within 400 meters of Plaintiffs' premises for longer than thirty minutes unless investigating criminal activity with probable cause"; and (3) "attempting to close Plaintiffs' establishments" unless Plaintiffs are "actively operating a Sexually Oriented Business featuring nude dancing in the presence of alcohol after 2:00 a.m." (ECF 8 at 8.)

Taken together, these prohibitions far exceed the proper scope of a TRO, which is merely to preserve the status quo pending a hearing on a preliminary injunction. Fed. R. Civ. P. 65. The status quo here is that the Ordinance is enforceable and that DPD officers can take necessary steps

14

to do so. If granted, these requests would essentially reimpose the injunction of the Ordinance in contravention of the Fifth Circuit's decision and, therefore, go far beyond simply "preserving the status quo." The first request is hopelessly vague – prohibiting DPD from arresting any employee of Plaintiffs' establishments for "conducting Operations," a term which does not appear to be defined. As stated above, section 41A-21(a) of the Dallas City Code and section 243.010(b) of the Texas Local Government Code provide for criminal charges for violation of provisions of chapter 41A, and there is no basis for restricting DPD officers from using all enforcement mechanisms available to them. The second request would restrict the movement of law enforcement beyond that of a pedestrian on the street – who, for example, would have a right to "maintain a physical presence" on a nearby public sidewalk for longer than thirty minutes and would also have a right to enter the premises of the SOB Plaintiffs, which are open to the general public. Finally, as discussed above, the third request would force DPD officers to enforce or not enforce the law based on the activity being conducted at any given time rather than enforcing it uniformly against all holders of a sexually-oriented business license. Furthermore, the request seeks a change to the language of the Ordinance itself, which makes no mention of alcohol whatsoever and states simply that "a sexually oriented business must be closed for business each day between the hours of 2:00 a.m. and 6:00 a.m." regardless of whether alcohol is present. Dallas, Tex., Code § 41A-14.3. Limiting enforcement of the Ordinance in these ways upends the status quo, nullifies the Fifth Circuit's order vacating the preliminary injunction of the Ordinance, and would disserve the public interest by inhibiting if not wholly preventing DPD officers' enforcement of a valid City ordinance, designed to protect public safety.

15

**CONCLUSION**

For the forgoing reasons, this Court should deny Plaintiffs' motion for a temporary restraining order and grant the City such other relief to which it may be entitled.

Respectfully submitted,

OFFICE OF THE CITY ATTORNEY
CITY OF DALLAS, TEXAS

By: *s/ Kathleen M. Fones*
Kathleen M. Fones
Texas Bar No. 24050611
Assistant City Attorney
kathleen.fones@dallas.gov

Stacy Jordan Rodriguez
Texas Bar No. 11016750
Assistant City Attorney
stacy.rodriguez@dallas.gov

7BN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone – 214/670-3519
Telecopier – 214/670-0622

**ATTORNEYS FOR CITY OF DALLAS**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was submitted to the Clerk of Court using the CM/ECF System for such electronic filing on this 24th day of January, 2024. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all parties registered under the CM/ECF System to receive service electronically.

By:   */s/ Kathleen M. Fones*

16