**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| XTC CABARET (DALLAS), INC. D/B/A XTC CABARET; FINE DINING CLUB, INC. D/B/A SILVER CITY CABARET; COASTER LINE COASTER CLUB INC. D/B/A TIGER CABARET; GUILLERMO BELTRAN DEL RIO TIRADO; DEDRRICK NERO; AND RICHARD BOTHMANN, JR., | § § § § § § § § § | CIVIL ACTION NO. 3:24-cv-00042-B |
| *Plaintiffs,* | § § | |
| v. | § § | |
| THE CITY OF DALLAS, THE CITY OF DALLAS POLICE DEPARTMENT, AND OFFICERS EDDIE GARCIA, DEVON POLK, AND CAMERON PETERSON IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES | § § § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs XTC Cabaret (Dallas), Inc. d/b/a XTC Cabaret ("XTC Cabaret"), Fine Dining Club, Inc. d/b/a Silver City Cabaret ("Silver City"), Coaster Line Coaster Club Inc. d/b/a Tiger Cabaret ("Tiger Cabaret"), Guillermo Beltran Del Rio Tirado ("Tirado"), Dedrrick Nero ("Nero"), and Richard Bothmann, Jr. ("Bothmann") (collectively "Plaintiffs") file this First Amended Complaint (the "Amended Complaint") against the City of Dallas, the City of Dallas Police Department, and Officers Eddie Garcia, Devon Polk, and Cameron Peterson in their official and individual capacities (collectively "Defendants").

**NATURE OF SUIT**

1.     This is an action for money damages, declaratory judgment, and injunctive relief brought

1

pursuant to 42 U.S.C. § 1983 for violating Plaintiffs' Right of Free Expression and Association and Substantive Due Process rights, as well as violating the Fourth Amended protections against unconstitutional searches and seizures for Tirado, Nero, and Bothmann (collectively the "Individual Plaintiffs"). At issue in this case is the Defendants' Policy of enforcing the Sexually Oriented Business Ordinance ("The Ordinance") against non-sexually oriented business activity after 2:00 a.m. conducted by any business holding an SOB permit ("Defendants' Policy"). This policy threatens and indeed causes arrests for activity clearly beyond the SOB Ordinance's scope.

<u>**PARTIES**</u>

2.      XTC Cabaret (Dallas), Inc. d/b/a XTC Cabaret is a Texas Corporation doing business in Dallas County, Texas.

3.      Fine Dining Club, Inc. d/b/a Silver City Cabaret is a Texas Corporation doing business in Dallas County, Texas.

4.      Coaster Line Coaster Club Inc. d/b/a Tiger Cabaret is a Texas Corporation doing business in Dallas County, Texas.

5.      Guillermo Beltran Del Rio Tirado is a Texas resident arrested in Dallas County, Texas by Defendants.

6.      Dedrrick Nero is a Texas resident arrested in Dallas County, Texas by Defendants.

7.      Richard Bothmann, Jr. is a Texas resident arrested in Dallas County, Texas by Defendants.

8.      Defendant City of Dallas is municipality organized under the laws and the Constitution of Texas, and has already appeared in this suit.

9.      Defendant Dallas Chief of Police Eddie Garcia is an individual living in Dallas County, and he may be served at 1400 Botham Jean Boulevard, Dallas, Texas 75215 or wherever he may be found.

2

10.     Defendant Dallas Major of Police Devon Polk is an individual living in Dallas County, and he may be served at 1400 Botham Jean Boulevard, Dallas, Texas 75215 or wherever he may be found.

11.     Defendant Detective Cameron Peterson is an individual living in Dallas County, and he may be served at 1400 Botham Jean Boulevard, Dallas, Texas 75215 or wherever he may be found.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction pursuant to the following statutory and common law claims:

    (a)     Defendants' acts, omissions, and wrongful conduct are violations of the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution;

    (b)     Defendants' acts, omissions, and wrongful conduct violate Plaintiffs' civil rights and are actionable pursuant to 42 U.S.C. § 1983.

13.     Under 28 U.S.C. § 1331, this Court has original jurisdiction over all civil matters arising under the laws of the United States.

14.     Plaintiffs are businesses incorporated and doing business in Dallas County and the State of Texas. The principal activities complained of occurred within or were originated from Dallas County, Texas. Therefore, venue is proper in this Court.

## FACTS

15.     XTC Cabaret, Silver City, Tiger Cabaret, (collectively the "Corporate Plaintiffs") have been legally operating as cabarets in Dallas County for many years and have complied with all applicable regulations governing sexually oriented businesses within the County and under Texas law. However, an ordinance amending § 41A of the Dallas City Code providing that sexually oriented businesses may not operate between 2:00 a.m. and 6:00 a.m. ("The Ordinance") went into effect on November 30, 2023. Accordingly, Plaintiffs planned to and did take the necessary steps to continue compliance with all applicable regulations governing sexually oriented businesses

within the County and under Texas law, including with The Ordinance.

**I.    Defendants threaten Plaintiff XTC Cabaret with unlawful prosecution even after the club communicated that it would not be operating as a sexually oriented business past 2:00 a.m.**

16.     On November 27, 2023, a Dallas Vice Officer hand-delivered a letter to XTC Cabaret from the City of Dallas. (*See* Exhibit A, Letter from the City of Dallas). Specifically, the officer handed the letter to Fernando Galdamez, who is one of the managers at XTC Cabaret. (*See* Exhibit B, Declaration of Fernando Galdamez). The letter advises that The Ordinance will be effective beginning November 30, 2023. (*See* Exhibit A, Letter from the City of Dallas). The letter also advises that, accordingly, sexually oriented businesses may not operate between 2:00 a.m. and 6:00 a.m. each day. (*Id*.).

17.     The letter further states "[p]ursuant to Dallas City Code, Section 41A-4(e), if the licensee has applied for, and received, both a Sexually Oriented Business license and a Dance Hall license, the applicant must comply with the hours of operation requirement found in Section 41A-14.3(a) of the Dallas City Code" – meaning it must stop operating at 2:00 a.m. – and that "[t]he possession of a Late-Hours permit issued pursuant to Section 14-3.1 of the Dallas City Code does not exempt the licensee of a Sexually Oriented Business license from the provisions of Section 41A-14.3(a) of the Dallas City Code." (*Id*.). In other words, regardless of whether the business is operating as a sexually oriented business or a dance hall after 2:00 a.m., the City's position is that the business is required to close at 2:00 a.m.

18.     The officer then verbally informed and threatened Galdamez that XTC Cabaret cannot be open past 2:00 a.m. and if the Police Department sees XTC Cabaret open past 2:00 a.m., Galdamez would be fined or go to jail. (*See* Exhibit B, Declaration of Fernando Galdamez).

19.     That same day, XTC Cabaret responded to the City of Dallas's letter with its own. (*See*

Exhibit C, XTC Cabaret's Response Letter). XTC Cabaret explained in their response that XTC Cabaret would not operate as a sexually oriented business as defined in the City of Dallas Ordinances after 2:00 a.m. (*Id*.). Rather, at or before 2:00 a.m., XTC Cabaret would operate as a restaurant serving food and non-alcoholic beverages to those customers who wish to remain on the premises. (*Id*.). XTC Cabaret's response further explained that from time to time there would be artistic shows after 2:00 a.m., however, the artistic shows (1) will not include a "dance or any similar live performance;" (2) will not include nudity; (3) will not include adult cabaret entertainment that is intended to provide sexual stimulation or sexual gratification; and (4) will not be distinguished by or characterized by an emphasis on matter depicting, simulating, describing, or related to specified anatomical areas or specified sexual activities. (*Id*.). The letter made it clear that, instead, after 2:00 a.m., XTC Cabaret will operate mainly as a restaurant offering the same menu items and non-alcoholic drink selections that it offers before 2:00 a.m. (*Id.*). In other words, XTC Cabaret made it clear that they would not be violating The Ordinance by operating as a sexually oriented business after 2:00 a.m.

20.     Despite XTC Cabaret's candidness, on November 29, 2023, Defendant Devon Polk, the Major of Police, sent an email to Plaintiffs' counsel restating XTC Cabaret, as a sexually oriented business, must stop operating at 2:00 a.m. (*See* Exhibit D, Email from Officer Polk). Officer Polk continues his email by explaining that operating as a restaurant requires a new certificate of occupancy, however, even if XTC Cabaret obtained a new certificate of occupancy, it would still be prohibited from operating after 2:00 a.m. because "the business is an SOB licensee." (*Id*.).

## II.     Defendants threaten Plaintiff Silver City with prosecution for operating lawfully as a dance hall.

21.     Silver City also received Defendants' letter on or around November 21, 2023. (*See* Exhibit E, Declaration of Richard Buttler).

5

22.     Silver City is an existing cabaret which holds not only a sexually oriented business license issued under § 41A of the Dallas City Code, but also holds a dance hall license issued under § 14-2 and a late-hour permit issued under § 14-5 of the Dallas City Code. Under § 14-5, an entity with a dance hall license may operate till 4am Monday through Saturday. DALLAS, TEXAS, CITY CODE, § 14-5 (DANCE HALL ORDINANCES). However, the City of Dallas takes the untenable position that if an entity has both a sexually oriented business license and a late-hour permit, the entity must comply with the hours of operation requirement found in § 41 A-14.3(a) of the Dallas City Code, and close at 2:00 a.m. (*See* Exhibit A, Letter from the City of Dallas).

23.     Contrary to the City of Dallas's position, Dallas City Code § 41A-4(e) actually says "[a] person who operates a sexually oriented business and possesses a dance hall license shall comply with the requirements and provisions of this chapter *as well as* the requirements and provisions of Chapter 14 of this code when applicable." DALLAS, TEXAS, CITY CODE, § 41A-4 (SEXUALLY ORIENTED BUSINESS ORDINANCES) (emphasis added). Dallas City Code § 14-5, for Dance Hall licenses, states an entity with a late-hours permit may operate until 4am Monday through Saturday. DALLAS, TEXAS, CITY CODE, § 14-5 (DANCE HALL ORDINANCES).

24.     Silver City not only has the required licenses and permits to operate past 2:00 a.m. under Dallas City Code § 14-5, but its primary business after 2:00 a.m. is also that of a restaurant offering food and non-alcoholic beverages and thus does not violate § 41A of the Dallas City Code. (*See* Exhibit E, Declaration of Richard Buttler). Notwithstanding these facts, Defendants actions threaten Silver City's business by unlawfully requiring them to close by 2:00 a.m.

**III.    Defendants wrongfully arrest the Individual Plaintiffs knowing that they were not operating a sexually oriented business, and threatens the unlawful prosecution of Tiger Cabaret's patrons and employees.**

25.     Tiger Cabaret is an existing cabaret which holds not only a sexually oriented business

license issued under § 41A of the Dallas City Code, but also holds a commercial amusement inside permit. (*See* Exhibit F, Declaration of Ray Carlson). The adjacent premises to Tiger Cabaret is a nightclub called Malibu. Malibu also has a commercial amusement inside permit along with a restaurant dual-use certificate of occupancy. Malibu predominately operates as a restaurant and secondly as a commercial amusement. Malibu is not a sexual oriented business as that term is defined in the City of Dallas Ordinances.

26.     On the night of December 2, 2023, and early morning of December 3, 2023, after Tiger Cabaret closed operations before or at 2:00 a.m., several patrons and employees went to Malibu. (*Id.*). Malibu began operating at 1:55 a.m. and stopped operations at 4:55 a.m. At the close of operations, the Dallas Police Department arrived and wrongfully arrested persons who were in the process of closing Malibu for "operating a sexually oriented business." These arrests were made by Dallas Police Officers under the supervision and direction of Detective Cameron Peterson, who made the probable cause determination for the arrests.

27.     Specifically, Plaintiffs Guillermo Beltran Del Rio Tirado, Dedrrick Nero, and Richard Bothmann were present at Malibu when the Dallas Police Department arrived. Tirado works as a barback, Nero works as a door man, and Bothmann works as a car valet. Plaintiffs Tirado, Nero, and Bothmann explained that Malibu was not a sexually oriented business; however, Dallas Police Officers indicated they did not care that Malibu was not operating as a sexually oriented business and that he was going to arrest everyone present.

28.     Plaintiffs Tirado, Nero, and Bothmann were then arrested for allegedly operating a sexually oriented business after 2:00 a.m., in violation of § 41A of the Dallas City Code. However, as discussed above, Malibu is not a sexually oriented business and does not operate as such. Law enforcement targeted Malibu because of its proximity to Tiger Cabaret despite that Tiger Cabaret

closed its operations in accordance with the Ordinance.

29.     Thus, Defendants have exceeded the scope of their authority resulting in harm and threat of harm to employees and patrons of Tiger Cabaret who wish to patronize Malibu after leaving Tiger Cabaret.

**IV.     Defendants' wrongful interpretation of The Ordinance unlawfully restricts the Corporate Plaintiffs' legal business operations.**

30.     In all ways, the Corporate Plaintiffs both qualify as a restaurant, under the Dallas City Code § 17, and complied with the requirements of the Dallas City Code § 41A. Nonetheless, the City of Dallas and the Dallas Police Department threaten to arrest their employees and shut down Plaintiffs.

31.     The reality is, the Corporate Plaintiffs do not operate as sexually oriented businesses within the plain language of the Dallas City Code § 41A after 2:00 a.m. The Corporate Plaintiffs were operating lawfully when the Defendants threatened to arrest its employees and shut down the business if it continued operations. The Corporate Plaintiffs have as much of a right to open as any other restaurant in the State of Texas and the Defendants' actions were completely unlawful.

32.     Dallas City Code § 41A defines "Sexually Oriented Businesses" as "an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, escort agency, nude model studio, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer." DALLAS, TEXAS, CITY CODE, § 41A-2(31) (SEXUALLY ORIENTED BUSINESS ORDINANCES).

33.     Dallas City Code § 17-1.5(b)(8) defines "Food Establishment" as an operation that:

    i.   sells, stores, prepares, packages, serves, or otherwise provides food
         for human consumption such as: a food service establishment; retail
         food store; mobile food unit; satellite or catered feeding location;

    catering operation if the operation provides food directly to a consumer or to a conveyance used to transport people; market; remote catered operations; conveyance used to transport people; institution; or food bank; and

ii.   relinquishes possession of food to a consumer directly, or indirectly through a delivery service, such as home delivery of grocery orders or restaurant takeout orders, or delivery service that is provided by common carriers.

DALLAS, TEXAS, CITY CODE, §17-1.5(B)(8) (FOOD ESTABLISHMENTS ORDINANCES).

34.    Beginning November 30, 2023, the Corporate Plaintiffs altered their business operations in compliance with the applicable regulations. Specifically, the Corporate Plaintiffs stopped operating as sexually oriented businesses as defined in the City of Dallas Ordinances after 2:00 a.m. Rather, at or before 2:00 a.m., The Corporate Plaintiffs' primary business is that of a restaurant offering food and non-alcoholic beverages to those customers who wish to remain on the premises. In other words, right before or after 2:00 a.m., XTC Dallas and Silver City operate as restaurants offering the same menu items and non-alcoholic drink selections that they offer before 2:00 a.m. Tiger Cabaret has no operations after 2:00 a.m. As such, none of the Corporate Plaintiffs are operating as sexually oriented businesses after 2:00 a.m. and thus, are permitted to operate as a restaurant after 2:00 a.m.

35.    However, the Corporate Plaintiffs are forced to decide whether to continue operating for a lawful purpose and risk Defendants wrongful pursuit of criminal charges or close its' businesses before 2:00 a.m. and consequentially, lose profits, hinder goodwill or business reputation, and suffer loss-of-use damages.

## CAUSES OF ACTION

36.    42 U.S.C. § 1983 provides that a person who, acting under color of law, subjects or causes to be subjected any United States citizen to the deprivation of any rights, privileges, or immunities

secured by the United States Constitution, shall be liable to the party injured in an action at law.

37.     At all relevant times and regarding all relevant actions of the Defendants as alleged in this Complaint, the Defendants' agents, officers, and employees were acting in its official capacity, under color of state law, and pursuant to the official policies, practices and customs of the governmental agencies or entities which the Defendants agents, officers and employees respectively represent.

38.     Defendants, acting under color of law, have subjected and caused Plaintiffs to be subjected to the deprivation of its rights, privileges, or immunities as secured by the First, Fourth, Fifth and Fourteenth Amendments.

39.     Specifically, Defendants have violated Plaintiffs' civil rights by shutting down the business without legal basis, and by threatening its representatives with arrest unlawfully and without authority.

40.     Officers Eddie Garcia, Devon Polk, and Cameron Peterson (the "Individual Officers") are liable in their official and individual capacities because they acted without legal authority or the colorable basis for authority in enforcing the Ordinance against non-SOB activity and enforcing the Ordinance against individuals not operating an SOB.

## THE FIRST AMENDMENT

41.     The First Amendment guarantees the right to free expression and association. U.S. CONST. AMEND. I.

42.     The business offers protected expression, *i.e.*, erotic dancing. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). Implicit in the right to engage in First Amendment-protected activities is "a corresponding right to associate with others in pursuit of a wide variety of political, social,

economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).

43.     "When public officials are given the power to deny use of a forum in advance of actual expression … the danger of prior restraints exists." *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004). Expression loses its meaning with no audience. Deterring and limiting patrons' right of access to protected expression naturally and necessarily impinges upon the rights of those performing the protected expression and those seeking to engage in such communicative activities. *Virginia v. American Booksellers Ass'n, Inc*., 484 U.S. 383, 392-94 (1988) (observing that vendors of adult entertainment have standing to assert First Amendment rights of their patrons generally).

44.     The pervasive presence of uniformed officers and patrol vehicles on the business's property, in full view of patrons and others, operates to send a clear message that their mere presence at the business will subject them to temporary detentions, police investigation, and potentially criminal prosecution. *See, e.g., Bee See Books, Inc. v. Leary*, 291 F.Supp. 622 (S.D.N.Y.1968).

*Retaliation*

45.     "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d at 258 (5th Cir. 2002). Defendants violated Plaintiffs' civil rights by retaliating against Plaintiffs for their form of expression. Specifically, Defendants seek to enforce the SOB Ordinance against non-SOB activity because of their expression at other times. Defendants Policy is to target and retaliate against the Plaintiffs for engaging in protected expression prior to 2:00 a.m. in the form of operating or being associated

with a business that has an SOB permit. Defendants' conduct is spurred by evil motive and involves reckless or callous indifference to the federally protected rights of others.

*Overbreadth*

46.     Further, Plaintiffs challenge the Ordinance as overbroad as to non-SOB operations. "[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that ... its restrictions will in fact alleviate [the harms] to a material degree." *Free Speech Coal., Inc. v. Paxton,* No. 23-50627, 2024 WL 982225, at *16 (5th Cir. Mar. 7, 2024). Defendants have not shown any data or information relating to crime rates for non-SOB activity, engaged in by late night establishments throughout the City and operating legally pursuant to a Dance Hall permit. When such a showing has not been made, the Fifth Circuit adopts "the approach recently taken by the Ninth Circuit: '[C]ompelling sellers to warn consumers of a potential 'risk' never confirmed by any regulatory body—or of a hazard not 'known' to more than a small subset of the scientific community—does not directly advance the government's interest.'" *Id.* Because Defendants have not demonstrated that Defendants' Policy will alleviate any alleged crime rate as to non-SOB establishments working after hours, the Defendants' Policy is impermissibly overbroad.

## THE FOURTH AMENDMENT

47.     The Fourth Amendment guarantees that the people shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Fourth Amendment guarantees to citizens the right to be free from arbitrary invasions at the unfettered discretion of officers in the field.

48.     The Corporate Plaintiffs assert Defendants' violations of the Fourth and Fourteenth Amendment on behalf of its patrons, guests, workers and visitors because special circumstances exist that preclude third-parties from effectively vindicating their rights. Plaintiffs have a

sufficiently concrete interest in the outcome because it suffers economic injury through constriction of its market or function. The patrons or would be patrons of Plaintiffs who were faced with the chilling effect of having to walk through a crowd of armed law enforcement officers to reach the business suffered the deprivation of their rights. *See Powers v. Ohio*, 499 U.S. 400 (1991); *Craig v. Boren,* 429 U.S. 190 (1976) ("[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function").

49.     Defendants violated the Individual Plaintiffs Fourth Amendment rights by arresting them for engaging in lawful activity. "Qualified immunity shields 'government officials performing discretionary functions' from civil liability for claims under federal law 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Randle v. Lockwood,* 666 F. App'x 333, 335 (5th Cir. 2016) (citing *Kinney v. Weaver,* 367 F.3d 337, 349 (5th Cir. 2004)). Here, the Individual Officers acted in violation of clearly established constitutional rights for individuals not to be targeted for their expression and to be free from arrest or threat of arrest for criminal activity not defined by the Ordinance.

## DUE PROCESS

50.     The Fifth and Fourteenth Amendments to the United States Constitution guarantee due process of law. The Fourteenth Amendment provides, in relevant part, that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV; U.S. CONST. AMEND. V.

51.     The Texas Constitution also guarantees its citizens due process of law. In relevant part, Article I, Section 19 of the Texas Constitution provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of

the land.

TEX. CONST. ART. 1 § 19.

52.     Both facially and as-applied, Defendants' actions violate Plaintiffs' rights to due process because such actions are an arbitrary and capricious abuse of rulemaking authority that shocks the conscience and bears no reasonable relationship to any governmental interest. It further violates Plaintiffs' right to use their property and conduct private business as guaranteed by the Federal and Texas Bills of Rights.

53.     Further, Defendants have no statutory basis (under the Texas Penal Code or otherwise) to threaten arrest of Plaintiffs' representatives and employees or close the Plaintiffs' operations (pursuant to § 41A of the Dallas City Code or otherwise).

54.     These actions are arbitrary, capricious, and shock the conscience. These actions are also procedurally deficient and an arbitrary taking and violate Plaintiffs' right to due process. U.S. CONST. AMEND. IV.

## **DECLARATORY JUDGMENT**

55.     To raise a constitutional challenge, a petitioner does not need to break the law and thereby expose himself to liability. *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 926 (5th Cir. 2023). Instead, he merely needs to show a "genuine threat" of enforcement. *Id.* (citing *Steffel v. Thompson,* 415 U.S. 452, 475 (1974)). "Indeed, '[t]he purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or breach of some contractual duty.'" *Id.* (citing *Chevron U.S.A., Inc. v. Traillour Oil Co.,* 987 F.2d 1138, 1154 (5th Cir. 1993) (quoting *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949))). "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus,*

573 U.S. 149, 158-59 (2014) (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights")).

56.     Rather, the Supreme Court permits "pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent." *Id.* Specifically, the Supreme Court has held "that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* (citing *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

57.     In light of Defendants' threats of arrest and prosecution towards certain Plaintiffs and actual arrests against other Plaintiffs, all Plaintiffs are entitled to have this Court declare the rights and legal relations of Plaintiffs and the Defendants with respect to relevant provisions of the Dallas City Code, Texas law, and the U.S. Constitution. *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 673 (2010) (section 1983 suit brought for violations of First and Fourteenth Amendments sought injunctive and declaratory relief). Specifically, Plaintiffs seek a declaratory judgment that:

    a.    Defendants' actions constitute a violation of Plaintiffs' First Amendment rights of expression and association, a violation of Plaintiffs Guillermo Beltran Del Rio Tirado, Dedrrick Nero, and Richard Bothmann's Fourth Amendment rights against unconstitutional searches and seizures, and a denial of the Due Process of Law pursuant to the Fifth and Fourteenth Amendments of the Federal Constitution as it relates to the operations of the Corporate Plaintiffs;

    b.    XTC Cabaret may stay open for any lawful purpose for as long as it wants as long as it is not operating as a Sexually Oriented Business after 2:00 a.m.

    c.    Silver City may stay open for any lawful purpose for as long as it wants as long as it is not operating as a Sexually Oriented Business after 2:00 a.m.

## DAMAGES

58.     Defendants' actions in this case are a part of the official policy of the City of Dallas, as evidenced by its communications to Plaintiffs and other businesses holding a Sexually Oriented Business Permit. (*See e.g.* Exhibit A, Letter from the City of Dallas).

59.     Defendants' actions, as detailed in this Complaint, violate clearly established constitutional rights of which a reasonable person would have known.

60.     As a result of Defendants' actions, Plaintiffs have been damaged in an amount that exceeds this Court's minimal jurisdictional limit. Accordingly, Plaintiffs request all actual damages resulting from, or proximately caused by Defendants' actions as described in this Complaint, including attorneys' fees incurred to mitigate damages caused by Defendants' actions. Plaintiffs also request all consequential, out-of-pocket or reliance, lost profits, restitution, goodwill or business reputation, and loss-of-use damages. Plaintiffs also request pre-judgment and post-judgment interest on any award of damages along with its costs of court.

## ATTORNEYS' FEES

61.     Plaintiffs request payment of their reasonable attorneys' fees and costs. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).

## APPLICATION FOR INJUNCTIVE RELIEF

62.     Plaintiffs seek a temporary and permanent injunction order prohibiting Defendants as follows:

    a.    Defendants are prohibited from arresting any employee or representative of Plaintiffs for operating;

    b.    Defendants are prohibited from maintaining a physical presence at Plaintiffs' establishments or within 400 meters of their premises for longer than thirty minutes unless investigating criminal activity with probable cause;

16

      c.      Defendants are prohibited from closing or attempting to close Plaintiffs' establishments under color of § 41A of the Dallas City Code unless Plaintiffs are actively operating a Sexually Oriented Business featuring nude entertainment in the presence of alcohol after 2:00 a.m. in violation of the Ordinance.

63.    Plaintiffs are entitled to injunctive relief because they have (1) a substantial likelihood of success on the merits; (2) Defendants' conduct presents a substantial threat that it will suffer irreparable injury absent the injunction; (3) this threatened injury outweighs any harm the injunction might cause the Defendants; and (4) the injunction will not impair the public interest.

64.    Absent an injunction, Plaintiffs will suffer irreparable injury. Businesses have a right to transact lawful business. The loss of constitutional freedoms for "even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

65.    Monetary relief is insufficient as a matter of law because the harm Plaintiffs will suffer between now and trial if not allowed to operate will result in the loss of business.

66.    An injunction will not significantly burden any of the Defendants' interests because nothing in the injunction in any way inhibits Defendants' legal law enforcement function. Indeed, the public interest favors the issuance of injunctive relief to protect the constitutional rights at stake in this case.

## CONDITIONS PRECEDENT

67.    All conditions precedent have been performed or have occurred.

## PRAYER

WHEREFORE, Plaintiffs respectfully request judgment be entered in their favor awarding;

      a.      Monetary damages;

      b.      Injunctive relief;

      c.      Prejudgment and post-judgment interest as allowed by law;

d.      Attorneys' fees;

e.      Expert fees;

f.      Costs of suit; and

g.      All other relief, in law and in equity, to which Plaintiffs may be entitled.

March 22, 2024                          Respectfully submitted,

                                        */s/ Casey T. Wallace*
                                        Casey T. Wallace
                                        State Bar No. 00795827
                                        Benjamin W. Allen
                                        State Bar No. 24069288
                                        Avery L. Larson
                                        State Bar No. 24132192
                                        Wallace & Allen, LLP
                                        440 Louisiana, Suite 590
                                        Houston, Texas 77002
                                        Telephone: (713) 224-1744
                                        Facsimile: (713) 600-0034
                                        cwallace@wallaceallen.com
                                        ballen@wallaceallen.com
                                        alarson@wallaceallen.com

                                        **COUNSEL FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

A true and correct copy of the above and foregoing instrument has been served upon the following in accordance with the Federal Rules of Civil Procedure on March 22, 2024.

Tammy L. Palomino
Dallas City Attorney
Kathleen M. Fones
Assistant City Attorney
Stacy Jordan Rodriguez
Assistant City Attorney
City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622
kathleen.fones@dallas.gov
stacy.rodriguez@dallas.gov

**COUNSEL FOR DEFENDANTS**

*/s/ Benjamin W. Allen*
Benjamin W. Allen