IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| XTC CABARET (DALLAS), INC. D/B/A XTC CABARET; FINE DINING CLUB, INC. D/B/A SILVER CITY CABARET; COASTER LINE COASTER CLUB INC. D/B/A TIGER CABARET; GUILLERMO BELTRAN DEL RIO TIRADO; DEDRRICK NERO; AND RICHARD BOTHMANN, JR., <br><br>*Plaintiffs,* <br><br>v. <br><br>THE CITY OF DALLAS, THE CITY OF DALLAS POLICE DEPARTMENT, AND OFFICERS EDDIE GARCIA, DEVON POLK, AND CAMERON PETERSON IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES <br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:24-cv-00042-B |

**PLAINTIFFS' BRIEF REGARDING DENIAL OF CERTIORARI IN FACIAL CHALLENGE INTERLOCUTORY APPEAL AND REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**

Plaintiffs XTC Cabaret (Dallas), Inc. d/b/a XTC Cabaret ("XTC Cabaret"), Fine Dining Club, Inc. d/b/a Silver City Cabaret ("Silver City"), Coaster Line Coaster Club Inc. d/b/a Tiger Cabaret ("Tiger Cabaret"), Guillermo Beltran Del Rio Tirado ("Tirado"), Dedrrick Nero ("Nero"), and Richard Bothmann, Jr. ("Bothmann") (collectively "Plaintiffs") file this Brief in response to the Court's Order for explanation of the effect, if any, that the Supreme Court's denial of certiorari in *Association of Club Executives of Dallas, Inc., v. City of Dallas*, No. 23-835, 2024 WL 1143708 (U.S. Mar. 18, 2024) has on the merits of this case (Dkt. No. 29) and Reply in support of their Motion for Preliminary Injunction (the "Motion").

**EFFECT OF CERTIORARI DENIAL**

The effect of the Supreme Court's denial of certiorari in the *Association of Club Executives of Dallas* case is that *Renton*'s secondary effects analysis applies to government regulation of sexually oriented business activity, including the Sexually Oriented Business Ordinance ("SOB Ordinance"). *See City of Renton v. Playtime Theatres, Inc.*, 475 US. 41 (1986). Plaintiffs' challenge against Defendants' policy of enforcing the SOB Ordinance against non-sexually oriented business activity after 2:00 a.m., specifically, any business at all conducted by SOB permit holder ("Defendants' Policy") is not directed at sexually oriented business activity, and *Renton* does not apply. Defendants' Policy is therefore subject to strict scrutiny because it targets Plaintiffs based on the fact that they engage in protected expressive activity at times other than when Defendants' Policy would enforce the SOB Ordinance against them. Plaintiffs' overbreadth challenge against the SOB Ordinance's application to non-SOB operations is subject to intermediate scrutiny under *Renton*. (*See* Dkt. No. 27, p. 12).

In *Association of Club Executives*, the trial court granted a preliminary injunction based on a facial challenge against the City of Dallas' Sexually Oriented Business Ordinance ("SOB Ordinance"), applying strict scrutiny based on the Fifth Circuit's treatment of Supreme Court precedent, "holding that a content-based law is subject to strict scrutiny regardless of the government's content-neutral justification, so as to abrogate the secondary effects doctrine in the SOB context." *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas*, 604 F.Supp.3d 414, 422-23 (N.D. Tex. 2022) (citing *Reagan National Advertising of Austin, Inc. v. City of Austin* (*Reagan I*), 972 F.3d 696 (5th Cir. 2020), *rev'd* 596 U.S. 61 (2022)).

On appeal, the Fifth Circuit held that the decisional rule above did not survive the Supreme Court's reversal of *Reagan I* and that the secondary effects analysis for regulation of sexually

oriented businesses continues to apply because "whether to overrule or modify *Renton* is the High Court's business, not ours." *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas, Texas*, 83 F.4th 958, 965 (5th Cir. 2023). The Supreme Court did not grant certiorari to determine whether to overrule or modify *Renton* in that case.

The law of the Fifth Circuit is therefore that *Renton* applies to the SOB Ordinance, but it does not apply to Defendants' Policy as challenged by Plaintiffs because such policy is not directed against SOB activity. However, for purposes of challenging Defendants' Policy or the SOB Ordinance as applied to non-SOB activity, whether strict or intermediate scrutiny applies will not meaningfully change this Court's analysis, because there are *no studies* and *no evidence* linking non-SOB activity to the secondary deleterious effects targeted by the SOB Ordinance. *Renton.*, 475 U.S. at 51-52.

## ARGUMENT AND AUTHORITIES

Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defendants' Response") largely defends the constitutionality of the SOB Ordinance itself and attempts to define the alleged policy at issue as simply enforcing the plain language of the SOB Ordinance. (*See e.g.* Dkt. No. 30, pp. 4-10). Those arguments belong in Civil Action No. 3:22-cv-00177, *Ass'n of Club Executives of Dallas v. City of Dallas*, an ongoing matter proceeding before the Honorable Judge Barbara Lynn regarding a facial challenge to the SOB Ordinance. But Plaintiffs' challenge in this case, which is directed at Defendants' Policy and the SOB Ordinance's application beyond the scope of SOB activity, cannot be justified on the grounds that may justify the SOB Ordinance itself. Plaintiffs have a substantial likelihood of success on the merits and have demonstrated an ongoing threat of irreparable harm in the form of unlawful arrests and ongoing threats of arrests resulting in the deprivation of constitutional rights. *Janvey v. Alguire,* 647 F.3d

585, 595 (5th Cir. 2011); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**I.      The Corporate Plaintiffs are not Sexually Oriented Businesses when they do not feature nude entertainment.**

Dallas City Code § 41A defines "Sexually Oriented Businesses" as "an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, escort agency, nude model studio, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer." DALLAS, TEXAS, CITY CODE, § 41A-2(31) (SEXUALLY ORIENTED BUSINESS ORDINANCES).

The SOB Ordinance itself elucidates how this definition should apply – it restricts "SOBs' hours to 'reduce crime and conserve police and fire-rescue resources' because 'the operations of [SOBs] between 2:00 a.m. and 6:00 a.m. is detrimental to the public health, safety, and general welfare.'" *Ass'n of Club Executives of Dallas*, 83 F.4th 958, at 962 (quoting the SOB Ordinance). The plain language of the ordinance demonstrates that it is directed against the ***operations of SOBs***.

The Defendants' Policy, in contrast, is directed solely at SOB licensure, regardless of SOB operation. (*See* Dkt. No. 27-1; 27-4). The evidence will show that there are SOB licensees who do not operate as SOBs at any time. The evidence will show that the Corporate Plaintiffs, after enactment of the SOB Ordinance, do not operate as SOBs during the hours prohibited by the SOB Ordinance.

At or before 2:00 a.m., The Corporate Plaintiffs' primary business is that of a restaurant offering food and non-alcoholic beverages to those customers who wish to remain on the premises. In other words, right before or after 2:00 a.m., XTC Dallas and Silver City operate as restaurants offering the same menu items and non-alcoholic drink selections that they offer before 2:00 a.m. Tiger Cabaret has a dance hall license and intends to operate as a dance hall (without nudity) after

2:00 a.m. As such, none of the Corporate Plaintiffs are operating as sexually oriented businesses after 2:00 a.m.—none of them are in the business of "offering a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer." DALLAS, TEXAS, CITY CODE, § 41A-2(31) (SEXUALLY ORIENTED BUSINESS ORDINANCES).

Lastly, Defendants themselves admit, in addition to enforcing the SOB Ordinance against licensees regardless of whether they are engaged in SOB operations, they enforce the SOB Ordinance against "unlicensed businesses engaged in sexually-oriented activity in violation of chapter 41A of the Dallas City Code." (Dkt. No. 30, p. 13). That is exactly how the SOB Ordinance should be enforced against *all businesses*—sexually oriented activity after 2:00 a.m. violates the SOB Ordinance. But a business should not be forced to close simply because it has an SOB permit, and Defendants' Policy to do just that is arbitrary and violates due process.[1] (Dkt. No. 25, pp. 6-7). It also retaliates against Plaintiffs for engaging in protected expression—sexually oriented dance—during non-prohibited times, without any justification that would allow it to survive either strict or intermediate scrutiny. (*Id.*, pp. 8-11).

**II.    Defendants' Policy is the official policy of Defendants regarding enforcement of the SOB Ordinance.**

The City of Dallas, acting through its spokespersons Eddie Garcia, Chief of Police, and Devon Palk, Major of Police, clearly stated Defendants' Policy on November 21, 2023:

> As the license holder, owner, manager, or person in charge of this business, we hope you will take all appropriate action to ensure compliance with Chapter 41A of the Dallas City Code regarding the hours of operation regulation and ensure that your business does not operate between the hours of 2:00 a.m. and 6:00 a.m.

(Dkt. No. 27-1). The next week, counsel for XTC Cabaret (Dallas), Inc., informed Defendants of

---

[1] Defendants' due process arguments in their opposition brief appear to be defending the SOB Ordinance, rather than against Defendants' Policy which Plaintiffs challenge in this case. (*See* Dkt. No. 30, pp. 19-22).

-5-

its intent to operate after 2:00 a.m. without engaging in any type of SOB operations:

> The attached letter seems to read that if your department finds the business establishment open even one minute after 2:00 a.m., that criminal sanctions will be sought by the Dallas Police Department even if the business establishment is not offering, providing, or allowing for any adult cabaret entertainment. This we want to avoid and is the reason this letter is being sent to you in advance of the November 30, 2023, enforcement date. Should your department hold the position that, regardless of what is going on inside, XTC Cabaret (Dallas), Inc. must close by 2:00 a.m. or face criminal and/or civil sanctions, I would appreciate being told in advance.

(Dkt. No. 27-3). Defendants' did indeed respond, and clarified that Defendants' Policy was to enforce the SOB Ordinance's closure requirements against all businesses with SOB licenses, regardless of whether they engage in SOB activity prohibited by the Ordinance:

> Thank you for reaching out. In regard to remaining open after 2am, all businesses with SOB licenses, including XTC Cabaret (Dallas), Inc. (XTC), must comply with the hours of operation requirement in Dallas City Code Section 41A-14.3(a). XTC may not operate between 2:00 a.m. and 6:00 a.m.

(Dkt. No. 27-4).

*Groden* establishes that an official city spokesperson can announce official policy, and it is difficult to imagine a clearer case than a letter from the chief of police to all SOB license holders announcing a policy that the SOB Ordinance and its closure will apply to them because they are license holders. *Groden v. City of Dallas, Texas*, 826 F.3d 280, 296 (5th Cir. 2016). Furthermore, Defendants want it both ways—they claim that Plaintiffs have failed to establish an official policy of the City of Dallas while also defending that policy as "uniformly applying the Ordinance to all businesses that have self-identified as an SOB by obtaining an SOB license." (Dkt. No. 30, p. 13). Defendants' Policy is the official policy of the City of Dallas as a matter of law.

### III. Plaintiffs' proposed injunction forbids only unconstitutional activity and completely preserves Defendants law enforcement efforts, including enforcement of the SOB Ordinance.

Lastly, as set forth in their brief in support of the Preliminary Injunction, Plaintiffs took pains to craft proposed injunctive language which would preserve Defendants' right to conduct law enforcement activities and enforce the SOB Ordinance against the activity it prohibits while

preserving Plaintiffs' constitutional rights. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021). The Court should award the Preliminary Injunction against Defendants' Policy.

## CONCLUSION & PRAYER

Plaintiffs respectfully request that the Court award them a Preliminary Injunction and for all other relief at law or equity to which they may be entitled.

April 12, 2024

Respectfully submitted,

*/s/ Casey T. Wallace*
Casey T. Wallace
State Bar No. 00795827
Benjamin W. Allen
State Bar No. 24069288
Avery L. Larson
State Bar No. 24132192
Wallace & Allen, LLP
440 Louisiana, Suite 590
Houston, Texas 77002
Telephone: (713) 224-1744
Facsimile: (713) 600-0034
cwallace@wallaceallen.com
ballen@wallaceallen.com
alarson@wallaceallen.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      A true and correct copy of the above and foregoing instrument has been served upon the following in accordance with the Federal Rules of Civil Procedure on April 12, 2024.

Tammy L. Palomino
Dallas City Attorney
Kathleen M. Fones
Assistant City Attorney
Stacy Jordan Rodriguez
Assistant City Attorney
City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622
kathleen.fones@dallas.gov
stacy.rodriguez@dallas.gov

**COUNSEL FOR DEFENDANTS**

                                         */s/ Benjamin W. Allen*
                                         Benjamin W. Allen