**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| XTC CABARET (DALLAS), INC. D/B/A XTC CABARET; FINE DINING CLUB, INC. D/B/A SILVER CITY CABARET; COASTER LINE COASTER CLUB INC. D/B/A TIGER CABARET; GUILLERMO BELTRAN DEL RIO TIRADO; DEDRRICK NERO; AND RICHARD BOTHMANN, JR., | § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-cv-00042-B |
| THE CITY OF DALLAS, THE CITY OF DALLAS POLICE DEPARTMENT, AND OFFICERS EDDIE GARCIA, DEVON POLK, AND CAMERON PETERSON IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES | § § § § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

Plaintiffs XTC Cabaret (Dallas), Inc. d/b/a XTC Cabaret ("XTC Cabaret"), Fine Dining Club, Inc. d/b/a Silver City Cabaret ("Silver City"), Coaster Line Coaster Club Inc. d/b/a Tiger Cabaret ("Tiger Cabaret"), Guillermo Beltran Del Rio Tirado ("Tirado"), Dedrrick Nero ("Nero"), and Richard Bothmann, Jr. ("Bothmann") (collectively "Plaintiffs") file this response to Defendants' Motion to Dismiss Amended Complaint (Dkt. No. 32).

**INTRODUCTION**

This is not a challenge to the legality of the ordinance amending Chapter 41A "Sexually Oriented Business" of the Dallas City Code ("SOB Ordinance") as enacted. Rather, this lawsuit is a challenge to the Defendants' Policy of enforcing the SOB Ordinance against non-sexually

oriented business activity after 2:00 a.m. conducted by any business holding an SOB permit ("Defendants' Policy") and the *ultra vires* enforcement of the SOB Ordinance against businesses who are not operating as SOBs, in contravention of the plain language of the SOB Ordinance itself.

That *ultra vires* enforcement of the SOB Ordinance is the plainly stated policy of the City of Dallas through the Dallas Police Department. ("DPD") (*See* Dkt. No. 27-1; 27-4). This policy threatens, and indeed causes, arrests for activity clearly beyond the SOB Ordinance's scope, which, in relevant part, extends only to a business "offering a service…intended to provide sexual stimulation or sexual gratification to the customer." DALLAS, TEXAS, CITY CODE § 41A-2(31) (definition of "Sexually Oriented Business."). The City of Dallas, pursuant to its policy and acting through the officers of the DPD, threatens action against businesses not operating as a sexually oriented business, and actually arrests individuals working at a business that never features sexually oriented business activity, because the City associates those individuals with SOBs. This policy is unlawful. Here, the fact that the Defendants acted without legal authority is beyond dispute, and this Court should issue a declaratory judgment and injunctive relief.

## STANDARD UNDER RULE 12(B)(1)

The Fifth Circuit has long distinguished between "facial" and "factual" jurisdictional attacks. *See Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). When the party challenging jurisdiction has not submitted evidence in support of its Rule 12(b)(1) motion to dismiss, as is the case here, the motion is a facial attack on plaintiffs' pleadings, and the court's review is limited to whether the complaint sufficiently alleges jurisdiction. *Prescott v. Bexar Cty.*, No. SA19CV1392JKPRBF, 2021 WL 812115, at *1 (W.D. Tex. Mar. 3, 2021) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

## RESPONSE TO 12(B)(1) MOTION TO DISMISS

Federal courts are obliged to decide cases within the scope of federal jurisdiction; "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, 82 (2013). "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 73. (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). "There is a three-prong test for determining whether the *Younger* abstention doctrine is applicable: (1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges." *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing *Younger v. Harris,* 401 U.S. 37, (1971)).

Furthermore, the "ongoing state judicial proceeding" must fit within one of three 'exceptional' categories to be considered as a basis for *Younger* abstention: "criminal

prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns*, 571 U.S. at 73. All three categories involve "enforcement actions [that] are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* at 79.

**I.    The Individual Plaintiffs' federal claims should not be dismissed or stayed due to their criminal proceedings because they are entitled to seek injunctive relief to prevent the ongoing threat of irreparable loss of federally protective rights.**

Defendants argue that the claims of Tirado, Nero, and Bothmann, (collectively the "Individual Plaintiffs") should be dismissed or stayed because the criminal proceedings resulting from their unlawful arrests are still pending. (*See* Dkt. No. 33, pp. 6-7). Further, Defendants urge the Court to apply the *Younger* abstention to decline to exercise jurisdiction over Individual Plaintiffs' declaratory and injunctive claims because of their pending criminal proceedings. (*See* Dkt. No. 33, pp. 7-9).

However, under *Ex Parte Young*, "courts of the United States have power to enjoin state officers from instituting criminal actions." *Younger v. Harris*, 401 U.S. 37, 45, (1971).  The "danger of irreparable loss is both great and immediate," justifying this relief, where "the threat to the plaintiff's federally protected rights [are] ones that cannot be eliminated by his defense against a single criminal prosecution as is the case here. *See id.*

Defendants' *ultra vires* unlawful enforcement of the SOB Ordinance threatens repeated false arrests and threatened prosecutions against the Individual Plaintiffs if they continue to lawfully work at establishments with an SOB license, or work with those even associated with an establishment with an SOB license, after 2:00 a.m.

Further, the Individual Plaintiffs' criminal proceedings will not impugn on the underlying federal lawsuit. Plaintiffs seek injunctive relief which has nothing to do with the Individual Plaintiffs' arrests; prohibiting Defendants from making future arrests where the Individual Plaintiffs, as well as other employees and patrons, are not undertaking SOB-activity.

Defendants also argue that even if the false arrest claims could be pursued at this time, allegations of past harm cannot establish standing for a request of prospective relief. (Dkt. No. 33, p. 7). However, under *Ex Parte Young*, a lawsuit can "be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Thus, the Individual Plaintiffs' claims are properly brought against Eddie Garcia, Dallas Chief of Police, Devon Palk, Dallas Major of Police, and Cameron Peterson, Dallas Detective, in their Official Capacity. (See Dkt. No 27, ¶¶ 9-11).

*Ex Parte Young* applies where the named defendant state official has "some connection with the enforcement of the act" at issue and "threatens and are about to commence proceedings to enforce the unconstitutional act." *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (citing *Ex Parte Young*, 209 U.S. 123, 155-56). Defendants Garcia, Palk, and Peterson expressly adopted and enforced the Defendants' Policy, which is evident not only by Defendants' letter and email, but by the unlawful arrest of Individual Plaintiffs. As previously discussed, Defendants' unlawful enforcement of the SOB Ordinance threatens repeated false arrests and threatened prosecutions against Individual Plaintiffs if they continue to lawfully work at establishments with an SOB license or with those even associated with an SOB license after 2:00 a.m. As such, the *Ex Parte Young* exception applies, and Individual Plaintiffs may seek prospective declaratory and injunctive relief.

Alternatively, the Individual Plaintiffs' claims for relief based on the past unlawful arrest, *only*, should be stayed pending resolution of their criminal proceedings. The claims should not be dismissed. Individual Plaintiffs filed their § 1983 claims, in part, in order to avoid running of the statute of limitations for same. While limitations under § 1983 is governed by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato,* 549 U.S. 384, 387-388 (2007). Under Texas law, the statute of limitations for false arrest is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a). The statute of limitations for a "§ 1983 claim commenced to run when [a plaintiff] appear[s] before the examining magistrate and [is] bound over for trial." *Wallace* 549 U.S. at 391. The City's decision whether to prosecute or dismiss the criminal charges as well as any potential criminal trial could take years to resolve, depriving the Individual Plaintiffs of relief based on their December 2023 unlawful arrests.

II.     ***Younger* abstention does not preclude Tiger Cabaret's request for declaratory judgment and injunctive relief because the ongoing state court litigation deals with a different Ordinance provision, the government's interests are different, and the state court litigation does not provide a proper forum to raise constitutional challenges at issue in this case.**

Defendants also urge the Court to apply *Younger* abstention and decline to exercise jurisdiction over Tiger Cabaret's declaratory and injunctive claims because of Tiger Cabaret's state court action – Cause No. DC-23-20774, *Coaster Line-Coaster Club, Inc., d/b/a Tiger Cabaret v. City of Dallas, Texas and Eddie Garcia*, *solely in his capacity as Chief of Police of the City of Dallas, Texas*, in the 116th  District Court of Dallas County, Texas ("Tiger Cabaret's appeal"). (*See* Dkt. No. 33, pp. 7-9). Defendants claim that Tiger Cabaret's appeal of the Chief of Police's determination to revoke its SOB license relates to civil penalties for violation of the Dallas City Code. (Dkt. No. 33, p. 8).

Although Tiger Cabaret is involved in a pending state proceeding, such proceeding would not interfere with the underlying lawsuit, the state interests regarding the federal and state proceedings differ, and the state proceeding would not provide adequate opportunity for Tiger Cabaret to raise its constitutional challenges underlying this lawsuit.

Tiger Cabaret's SOB license was revoked for allegedly violating Dallas City Code Section 41A-12, which is not the Dallas City Code that is subject to Defendants' misinterpretation in the underlying lawsuit. (*See* Dkt. No. 34, COD APPX 009-019). Under Dallas City Code Section 41A-12, a licensee shall not transfer his license to another, nor shall a licensee operate a sexually oriented business under the authority of a license at any place other than the address designated in the application. According to Tiger Cabaret's petition in the state proceeding regarding its appeal, Tiger Cabaret received a revocation letter from the City of Dallas revoking Tiger Cabaret's SOB license because it allegedly moved its SOB operations to Malibu and thus violated Dallas City Code Section 41A-12. (*See* Dkt. No. 34, COD APPX 012 and COD APPX 018). Although the revocation letter mentions Tiger Cabaret violated the Dallas City Code 41A-14.3, it is clear that Tiger Cabaret's license was revoked for violating Dallas City Code Section 41A-12 – not for violating Dallas City Code 41A-14.3. (*See* Dkt. No. 34, COD APPX 018).

Further, pursuant to Dallas City Code Section 41A-11, Tiger Cabaret had to appeal the revocation to the Permit and License Appeal Board within 10 days after the receipt of notice or an appeal to the district court within 30 days or else the revocation would be final. (Dkt. No. 34, COD APPX 018; *see also* DALLAS, TEXAS, CITY CODE § 41A-11). So, Tiger Cabaret had no choice but to appeal the revocation or else its license revocation would be final, and that appeal is limited to whether the City of Dallas properly terminated Tiger Cabaret's SOB.

In this case, Tiger Cabaret is not challenging its right to transfer its license to another location pursuant to Dallas City Code 41A-12. Rather, it is challenging the *ultra vires* actions of Defendants, their interpretation of the Dallas City Code 41A-14.3 through the Defendants' Policy, and the overbreadth of the Ordinance's application to non-SOB activity. This case does not interfere with the state court proceeding. Moreover, because Tiger Cabaret's state action regards the violation of the Dallas City Code Section 41A-12 and not the violation of the Dallas City Code 41A-14.3, government interests are different.

The third prong of the test for *Younger* applicability is whether the state proceeding affords an adequate opportunity to raise constitutional challenges. *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 521 (5th Cir. 2004). There is no question that because the proceedings regard different violations, the state court proceedings do not provide an adequate opportunity to address the constitutional challenges to Tiger Cabaret's actions in the underlying lawsuit. For the foregoing reasons, the *Younger* abstention is inappropriate and does not apply.

Lastly, Tiger Cabaret's appeal was filed by the Plaintiff in this case and therefore is not a "civil enforcement proceeding." The State Court Action regarding Tiger Cabaret's appeal was brought by the Plaintiff in this action, and relief sought by the Plaintiff cannot constitute a civil enforcement action that might form the basis of *Younger* Abstention. The State Court Action regarding Tiger Cabaret's appeal was filed and is being prosecuted by Plaintiff – Tiger Cabaret. Abstention in this case "is irreconcilable with [the Supreme Court's] dominant instruction that, even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception, not the rule." *Sprint*, 571 U.S. at 82.

**III.     The SOB Plaintiffs do not lack standing to assert their Fourth Amendment claims.**

Defendants argue Fourth Amendment rights cannot be asserted vicariously and therefore SOB Plaintiffs do not have standing to make Fourth Amendment claims on behalf of their patrons, guests, workers, and visitors. (Dkt. No. 33, p. 9). Defendants make this argument by citing legal precedent where the facts are in no way analogous to the underlying lawsuit. (*Id.*); *See also Rakas v. Illinois*, 439 U.S. 128 (1978)). The legal precedent cited by Defendant regards a vehicle being searched with multiple individuals present. *Rakas,* 439 U.S. 128 at 130. The passengers later challenged the search of a vehicle, but the court ruled the passengers lacked standing because they did not own the vehicle, or the items seized. *Id.* at 133-134.

Here, the patrons or would be patrons of SOB Plaintiffs, will have to walk through a crowd of armed law enforcement officers to reach the business, and suffer the deprivation of their rights. *See Powers v. Ohio,* 499 U.S. 400 (1991). Vendors, such as SOB Plaintiffs, "who either must obey the statutory provisions and incur economic injury or disobey the statute and suffer sanctions" may "resist efforts to restrict their operations by advocating the rights of third parties seeking access to their market." *Craig v. Boren*, 429 U.S. 190 (1976).

Moreover, the Supreme Court has recognized the right of litigants to bring actions on behalf of third parties, provided the following three criteria are satisfied: "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute, the litigant must have a close relation to the third party, and there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers,* 499 U.S. at 410-411 (quoting *Singleton v. Wulff*, 428 U.S. 106 (1976)). Further, the Supreme Court has permitted litigants to raise third-party rights in order to prevent possible future prosecution. *Id.* (citing *Doe v. Bolton*, 410 U.S. 179, 93 (1973) (overruled on other grounds)).

As stated in Plaintiffs' First Amended Complaint, the SOB Plaintiffs have a sufficiently concrete interest in the outcome of their patrons, guests, workers, and visitors' violated rights because it causes the SOB Plaintiffs to suffer economic injury through constriction of its market or function. (Dkt. No. 27, ¶¶ 12-13). The SOB Plaintiffs have a close relationship with their patrons, guests, workers, and visitors as one needs the other. Lastly, SOB Plaintiffs' patrons, guests, workers, and visitors are hindered from protecting their own interests of being free from unlawful arrests or threat of unlawful arrest as those claims have not yet arisen and will only arise in connection with their relationship to the SOB Plaintiffs. Therefore, the SOB Plaintiffs have standing to bring their Fourth Amendment claims.

## **STANDARD UNDER RULE 12(B)(6)**

When ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *K.H. as Next Friend of R.H. v. Howe*, No. SA-19-CV-01412-JKP, 2020 WL 6470365, at *2 (W.D. Tex. Nov. 3, 2020) (citing *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009)). Dismissal pursuant to Rule 12(b)(6) is only appropriate when it appears no relief can be granted under any set of facts that could be proven consistent with the allegations. *See Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998); *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 650 (E.D. Tex. 1999).

Thus, to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual assertions that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Stripling v. Freedom Mortg. Corp.*, No. SA-20-CV-00174-JKP, 2020 WL 1814404, at *1 (W.D. Tex. Apr. 9, 2020) (quoting *Iqbal*, 556 U.S. at 678). After review of the well-pleaded facts, if a court can infer no more than the mere possibility of misconduct, the pleader fails to show its entitlement to relief. *Id.* at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)). However, "[a] court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### RESPONSE TO RULE 12(B)(6) MOTION TO DISMISS

The legal arguments advanced in Defendants' Motion to Dismiss do not establish that Plaintiff has failed to state a claim upon which relief can be granted. Specifically, Plaintiffs' First Amended Complaint sufficiently identifies the policy at issue, the policy-maker, and the constitutional violations whose moving force is the policy, thus establishing a claim under *Monell.*

**I.      The City of Dallas enacted the official policy of enforcing the SOB Ordinance against non-SOB business activity after 2:00 a.m. conducted by any business holding a SOB permit that is clearly beyond the SOB Ordinance scope.**

A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.; see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("local governments are responsible only for their own illegal acts"). To state a claim arising from the execution of an entity's policy or custom, Plaintiffs must set forth factual allegations to show "(1) an official policy (or custom), of which (2) a policy

maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Batyukova v. Doege*, No. 5:19-CV-00391-JKP, 2019 WL 5579547, at \*4 (W.D. Tex. Oct. 29, 2019) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

### A.   Plaintiffs sufficiently pled the policy at issue as the Defendants' Policy.

Defendants argue Plaintiffs' First Amended Complaint is inconsistent as to whether the policy at issue is the Ordinance itself or if the policy is the wrongful interpretation of the Ordinance. (Dkt. No. 33, p. 10).  However, Plaintiffs have specifically pleaded, and identified, the policy at issue as Defendants' Policy of enforcing the SOB Ordinance against non-sexually oriented business activity after 2:00 a.m. conducted by any business holding an SOB permit. (Dkt. No. 27, ¶ 1). Plaintiffs also pled Defendants' Policy threatens and causes arrests for activity clearly beyond the SOB Ordinance's scope. (*Id.*)  Plaintiffs continue to refer to the Defendants' Policy as the policy at issue throughout the First Amended Complaint. (*See generally* Dkt. No. 27).

As stated in Plaintiffs' First Amended Complaint, the letter from the City of Dallas, signed by Defendant Garcia, advises that, starting November 30, 2023, SOBs may not operate between 2:00 a.m. and 6:00 a.m. and further states "[p]ursuant to Dallas City Code, Section 41A-4(e), if the licensee has applied for, and received, both a [SOB] license and a Dance Hall license, the applicant must comply with the hours of operation requirement found in Section 41A-14.3(a) of the Dallas City Code." (Dkt. No. 27, ¶¶ 16-17). In other words, regardless of whether the business is operating as a SOB or a dance hall after 2:00 a.m., the Defendants' position is that the business is required to close at 2:00 a.m. if the business has received a SOB license. In taking this position, Defendants expressly adopted a policy that ignores the plain language of the

Ordinance while nullifying the operative language in the Dancehall Ordinance. "A cardinal rule of statutory construction is that the legislature is never presumed to do a useless or meaningless act." *Bray v. Tejas Toyota, Inc.,* 363 S.W.3d 777, 784 (Tex. App.—Austin 2012, no pet.) (citing *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981)). This policy also results in arbitrary treatment completely untethered from the language of the Ordinance.

As explained in Plaintiffs' First Amended Complaint, the Dallas City Code, Section 41A-4(e) does not state SOB and dance hall licensees must comply with the hours of operation requirement found in Section 41A-14.3(a) of the Dallas City Code, rather Dallas City Code, Section 41A-4(e) states "[a] person who *operates* a sexually oriented business and possesses a dance hall license shall comply with the requirements and provisions of this chapter *as well as* the requirements and provisions of Chapter 14 of this code when applicable." (Dkt. No. 27 ¶ 23); *see* DALLAS, TEXAS, CITY CODE, § 41A-4 (SEXUALLY ORIENTED BUSINESS ORDINANCES) (emphasis added). Dallas City Code § 14-5, for dance hall licenses, states an entity with a late-hours permit may operate until 4:00 a.m. Monday through Saturday. DALLAS, TEXAS, CITY CODE, § 14-5 (DANCE HALL ORDINANCES). The Ordinance does not state an SOB operating as a dance hall, or operating as another non-SOB business, is required to close at 2:00 a.m. *See* DALLAS, TEXAS, CITY CODE, § 41A-4 (SEXUALLY ORIENTED BUSINESS ORDINANCES). The plain language of the ordinance demonstrates that it is directed against the *operations of SOBs* after 2:00 a.m. *Id.* An establishment carrying both an SOB and dance hall license carries with it the burden of not operating as an SOB after 2:00 a.m. but the benefit of operating as a Dance Hall until 4:00 a.m. The Defendants' Policy, in contrast, is directed solely at SOB licensure, regardless of SOB operation, and therefore deprives dance hall licensees of the benefits from said license.

-13-

Defendants further argue that Plaintiffs do not point to any official policy of the City to arrest individuals for violations of Section 41A-14.3 of the Dallas City Code. (Dkt. No. 33, p. 10).  However, Plaintiffs clearly pled Defendants' Policy threatens and indeed causes arrests for activity clearly beyond the SOB Ordinance's scope. (Dkt. No. 27, ¶¶ 1, 29). As explained above and in Plaintiffs' First Amended Complaint, Defendants' Policy was established through a letter from the City of Dallas which was signed by Defendant Garcia. (Dkt. No. 27, ¶¶ 16-17; Dkt. No. 27-1). The letter unequivocally states the City's policy to arrest individuals for operating a business which holds an SOB permit between the hours of 2:00 a.m. and 6:00 a.m. (*See* Dkt. No. 27-1). Defendants argue that this statement is merely enforcing the law, which is not sufficient to meet the pleading requirements. (Dkt. No. 33, p. 12-13). However, the statement reflects enforcement of the Defendants' Policy, an unlawful application of the Ordinance, not the Ordinance itself.

For the forgoing reasons, Plaintiffs properly pled the Defendants' Policy as the policy at issue and thus meets the first *Monell* requirement.

### B.    Plaintiffs sufficiently pled the City of Dallas and Defendants Garcia and Palk as the policy makers.

Although Defendants first argued Plaintiffs' First Amended Complaint is inconsistent as to whether the policy at issue is the Ordinance itself or if the policy is the wrongful interpretation of the Ordinance, Defendants now argue Plaintiffs are attacking the Ordinance itself and therefore failed to plead the Dallas City Council as the policy maker. (Dkt. No. 33, p. 13).  More specifically, Defendants argue Plaintiffs failed to plead any facts to support a claim that the Dallas City Council delegated its policymaking authority as opposed to decision-making authority to any DPD officer. (Dkt. No. 33, p. 14). As explained above, Plaintiffs are not attacking the Ordinance, rather they are attacking the Defendants' Policy, which unlawfully

exceeds the scope and legal basis for the Ordinance. (*See generally* Dkt. No. 27).

Plaintiffs sufficiently pled the policy maker for Defendants' Policy is the City of Dallas, and the spokesperson is Defendant Garcia, Chief of the DPD, and Defendant Palk, Major of Police.[1] (Dkt. No. 27-1). As pled in Plaintiffs' First Amended Complaint, Defendant's Policy was articulated through a letter from the City of Dallas, which was signed by Defendant Garcia, and then articulated a second time, by Devon Palk, in an email articulating that the City of Dallas' policy is that the Ordinance applies to any business holding a sexually oriented business license. (*Id.* ¶¶16-17, 20; Dkt. No. 27-4).

*Groden* establishes that an official city spokesperson can announce official policy, and it is difficult to imagine a clearer case than a letter from the chief of police to all businesses holding SOB licenses announcing a policy that the SOB Ordinance will apply to them on the sole basis that they hold a SOB license and, therefore, they must close during the 2:00 a.m. to 6:00 a.m. timeframe. *Groden v. City of Dallas, Texas*, 826 F.3d 280, 296 (5th Cir. 2016). Furthermore, Defendants want it both ways—they claim that Plaintiffs have failed to establish an official policy of the City of Dallas while also defending that policy as "uniformly applying the Ordinance to all businesses that have self-identified as a SOB by obtaining a SOB license." (Dkt. No. 33, p. 18). Defendants' Policy is the official policy of the City of Dallas as a matter of law.

Furthermore, although Defendants Garcia and Palk are identified by name in the Complaint, such a pleading is not necessary. "[T]he specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable."

---

[1] Both pieces of correspondence from the Dallas Police Department purport to come from the City of Dallas, as the letter is on City of Dallas letterhead (Dkt. No. 27-1); and the email doubling down on its position that "all businesses with SOB licenses" must close at 2 a.m. contains a signature block listing "City of Dallas" above the Dallas Police Department. (Dkt. No. 27-4).

*Groden*, 826 F.3d at 284.

For the forgoing reasons, Plaintiffs properly pled and identified the policy makers of the Defendants' Policy and thus meets the second *Monell* requirement.

### C.    Plaintiffs' First Amended Complaint states multiple bases for relief under the United States Constitution.

Defendants state Plaintiffs cannot meet the elements of *Monell* because they have failed to sufficiently demonstrate any constitutional violation whose moving force is a policy or custom promulgated or ratified by the Dallas City Council. (Dkt. No. 33, p. 15). Defendants' unlawful enforcement of a regime beyond the scope of the Ordinance and the overbreadth of the Ordinance's application to non-SOB activity are the moving forces of the violations of Plaintiffs' constitutional rights.

### 1.    Plaintiffs sufficiently pled a First Amendment violation claim by meeting the elements of *Monell*.

Defendants argue that Plaintiffs have failed to plead a First Amendment claim because Plaintiffs did not provide facts demonstrating a pervasive police presence. (Dkt. No. 33, pp. 15-16). However, facts pertaining to a pervasive police presence are unnecessary to plead a First Amendment claim and therefore, Defendants' argument is unfounded. *See Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002).

### 2.    Plaintiffs sufficiently pled a First Amendment Retaliation claim because they pled facts sufficient to prove Defendants' Policy targets and retaliates against Plaintiffs' protected expression.

Defendants argue it is unclear whether Plaintiffs are alleging that the act of retaliation is requiring the SOB Plaintiffs to close their businesses at 2:00 a.m. or the arrests of Individual Plaintiffs at Malibu. (Dkt. No. 33, p. 16). However, Plaintiffs clearly allege Defendants' retaliation is enforcing the SOB Ordinance against non-SOB activity because of their form of

expression at other times. (Dkt. No. 27, ¶ 45). To establish a First Amendment retaliation claim, Plaintiffs must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan,* 290 F.3d at 258. As stated in Plaintiffs' First Amended Complaint, Defendants violated Plaintiffs civil rights by retaliating against Plaintiffs for their form of expression. (Dkt. No. 27, ¶ 45).

Throughout Plaintiffs' First Amended Complaint, Plaintiffs discuss the arrests and threats of arrests to Plaintiffs and their representatives for not abiding by Defendants' Policy. (Dkt. No. 27, ¶¶ 1, 26, 27, 28, 30, 31, 39, and 49). An arrest or the threat of arrest is sufficient to "chill a person of ordinary firmness from engaging in that activity." *Keenan*, 290 F.3d at 258. As explained above, and in Plaintiffs' First Amended Complaint, Defendants' adverse actions were substantially motivated against Plaintiffs' exercise of their freedom of expression. (Dkt. No. 27, ¶ 45). Specifically, Defendants seek to enforce the SOB Ordinance against non-SOB activity because of their expression at other times. (*Id.*). Defendants' Policy is to target and retaliate against the Plaintiffs for engaging in protected expression prior to 2:00 a.m. in the form of operating or being associated with a business that has an SOB permit. ((*Id.*).

For the foregoing reasons, Plaintiffs properly pled a First Amendment retaliation claim.

> **3.** **Plaintiffs sufficiently pled a First Amendment claim based on overbreadth because their claim falls under the First Amendment free expression clause and because Defendants have not shown any data or information relating to crime rates for non-SOB activity.**

Defendants first argue Plaintiffs' overbreadth claim may not fall under the First Amendment free expression clause. (Dkt. No. 33, pp. 17-18). Specifically, Defendants argue that

Plaintiffs call for a content-based enforcement of the ordinance by requiring the City to enforce the ordinance only when the regulated activity the ordinance affects is being undertaken. (Dkt. No. 33, p. 18). This argument makes no sense. If the SOB Ordinance regulating SOBs and requiring them to close at 2:00 a.m. is constitutional under *Renton* then it's enforceable against SOB activity, but Plaintiffs' position is that Defendants seek to enforce the SOB Ordinance against non-SOB activity because of their expression at other times, which is without question unlawful First Amendment retaliation. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan*, 290 F.3d at 258; *see also Brooks v. City of W. Point, Miss.,* 639 F. App'x 986, 989 (5th Cir. 2016) (denying summary judgment in favor of a police officer who arrested plaintiff for cursing at him).

Defendants rely on *Stanglin* to suggest that restaurant and dancehall uses Plaintiffs seek to provide between the hours of 2:00 a.m. and 6:00 a.m. are not First Amendment activity. (Dkt. No. 33, p. 18, 20); *City of Dallas v. Stanglin,* 490 U.S. 12, 25 (1989). This misses the Plaintiffs' argument entirely. Whether or not the post 2:00 a.m. activity for which Defendants have arrested or threatened to arrest Plaintiffs is protected by the First Amendment, the fact that Defendants target and retaliate against the Plaintiffs for engaging in protected expression prior to 2:00 a.m. in the form of operating or being associated with an SOB makes Plaintiffs' First Amendment claim. Nude or topless dancing is a protected right of expression under the First Amendment. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000). An arrest or the threat of arrest is sufficient to "chill a person of ordinary firmness from engaging in that activity." *Keenan*, 290 F.3d at 258. And the Defendants' Policy expressly states that the SOB Ordinance will be enforced outside its scope against those who engage in constitutionally protected SOB activities. *See id.*

Further, Defendants have no evidence and no studies that would allow the Defendants' Policy as applied to Plaintiffs to survive intermediate scrutiny under *Renton*. Separate and apart from what motivates Defendants to adopt their policy to enforce the SOB Ordinance against all SOB Licensees, and separate and apart from how arbitrary their policy is compared to the SOB Ordinance's plain language, Defendants' Policy cannot satisfy intermediate scrutiny under *Renton.*

Defendants' Policy survives a First Amendment challenge if it "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas, Texas,* 83 F.4th 958, 965 (5th Cir. 2023). For the SOB Ordinance itself, that meant "whether the City could reasonably believe that its evidence linked SOBs operation between 2:00 a.m.–6:00 a.m. and the secondary effects targeted by the Ordinance." *Id*. at 966.

The Fifth Circuit held that the City of Dallas met this standard with respect to the SOB Ordinance itself, emphasizing two categories of evidence offered by the City in support. First, the Fifth Circuit considered a history of calls for service and police activity during late-night operations of SOBs:

> responding to multiple shootings at Dallas SOBs in the late hours of the night, the City formed a task force to increase police presence around SOBs. The task force operated for the better part of a year and devoted over 1,200 man-hours to patrols. It made over 100 felony arrests, answered over 100 911 calls, and made over 350 weapons and drug seizures. To be sure, as the district court noted, not every arrestor seizure was related to an SOB. But the City was still entitled to rely on this type of boots-on-the-ground experience in crafting the Ordinance.

*Id*. at 967. Second, the Fifth Circuit considered studies referred to in the SOB Ordinance itself regarding criminal activity in late night operation of SOBs:

> While considering the Ordinance, the city council had before it five other Texas cities' hours-of-operation restrictions on SOBs, including those of Fort Worth,

> San Antonio, and El Paso. The Ordinance itself noted that Amarillo and
> Beaumont had issued reports showing "a positive correlation between the hours of
> operation of [SOBs] and higher crime rates." And all this was in addition to the
> three studies that, in the district court's words, "suggest that SOBs are associated
> with an increase in overall crime."

*Id.,* 967-68. Based on this data, the Court held that the City could reasonably believe there was a link between the regulated activity and the secondary effects it sought to regulate.

For the Defendants' Policy as applied to Plaintiffs, the question is whether Defendants could reasonably believe that evidence links SOB Licensees engaging in non-SOB activity between 2:00 a.m.–6:00 a.m. and the secondary effects targeted by the Ordinance.

As the district court pointed out and the Fifth Circuit noted, the City failed "to include crime data associated with non-SOBs" operating after hours. *Id.* at 968. The Fifth Circuit held that the district court's requirement of comparative data between SOBs and 'other late night establishments' 'to conclude that the secondary effects are linked to the SOBs' was incorrect and that the "City was free to make reasonable inferences" about SOBs from the information cited above. *Id.*

Under Fifth Circuit law, the City's study and data supports an SOB regulation governing SOB activity. As both courts observed, the studies that the City relied upon contain no data or information relating to crime rates for non-SOB activity, engaged in by late night establishments throughout the City and operating legally pursuant to a Dance Hall permit. Nor has any been cited in this case at any stage. There is no secondary effects analysis supporting the application of the SOB Ordinance to SOB permit holders who are not operating as SOBs after hours, and the Defendants' Policy cannot survive intermediate scrutiny under *Renton*.

In the alternative, Defendants argue that Plaintiffs did not plead sufficient facts to meet the standard for evaluating a First Amendment challenge under *Renton*. (Dkt. No. 33, p. 18).

Under *Renton*, a policy does not violate the First Amendment if it "is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication." *Renton* 475 US. at 50. Moreover, a policy is "designed to serve a substantial government interest" when the municipality can "provid[e] evidence that supports a link" between the regulated business and the targeted secondary effects. *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 434, 437 (2002).

For the Defendants' Policy as applied to Plaintiffs, the question is whether Defendants could reasonably believe that evidence links SOB Licensees engaging in non-SOB activity between 2:00 a.m.–6:00 a.m. and the secondary effects targeted by the Ordinance. Defendants have not shown any data or information relating to crime rates for non-SOB activity, engaged in by late night establishments throughout the City and operating legally pursuant to a Dance Hall permit. (Dkt. No 27, ¶ 46).

### 4. Plaintiffs sufficiently pled a Fourth Amendment violation claim because they pled facts sufficient to prove Individual Plaintiffs were arrested while engaging in lawful activity and that SOB Plaintiffs' patrons and workers suffered a deprivation of rights.

Defendants argue Plaintiffs have not alleged any search or seizure of materials and more over have not alleged any legitimate expectation of privacy in the public areas of businesses open to the general public. (Dkt. No. 33, p. 21). Again, Defendants miss Plaintiffs' argument regarding their Fourth Amendment violation claims. Defendants violated the Individual Plaintiffs Fourth Amendment rights by arresting them for engaging in lawful activity, not for searching and seizing materials. Defendants further argue Plaintiffs did not provide any specific facts to support the SOB Plaintiffs' Fourth Amendment claims. (Dkt. No. 33, p. 22). However, the SOB Plaintiffs asserted Defendants' violations of the Fourth Amendment on behalf of its patrons, guests, workers and visitors because special circumstances exist that preclude third-parties from

effectively vindicating their rights. (Dkt. No 27, ¶ 48). Plaintiffs further stated the patrons or would be patrons of Plaintiffs will be faced with the chilling effect of having to walk through a crowd of armed law enforcement officers to reach the business and suffer the deprivation of their rights. (*Id.*). This statement is supported by the fact that Officers were present, and arrests were made on the morning of December 3, 2023. (Dkt. No 27, ¶¶ 26-28).

For the foregoing reasons, Plaintiffs properly pled a Fourth Amendment violation thus meeting the third *Monell* requirement.

### 5. Plaintiffs sufficiently pled a Fifth and Fourteenth Amendment violation claim because they pled facts sufficient to prove Defendants overreached beyond the scope of their authority.

Defendants' due process arguments in their motion appear to be defending the SOB Ordinance, rather than defending Defendants' Policy which Plaintiffs challenge in this case. (*See* Dkt. No. 33, p. 22-25). There is no question that government overreaching beyond the scope of its authority is, on its own, a due process violation. "[T]here is no place in our constitutional system for the exercise of arbitrary power, and, if the Secretary has exceeded the authority conferred upon him by law, then there is power in the courts to restore the status of the parties aggrieved by such unwarranted action." *Garfield v. U.S. ex rel. Goldsby*, 211 U.S. 249, 262 (1908). The Supreme Court has noted that, "historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." *Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340-41 (5th Cir. 2001) (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986) (emphasis omitted)). A government violates substantive due process when it deprives an individual of constitutional rights by an arbitrary use of its power. *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000).

Plaintiff need only plead that Defendants have deprived them of a protected property interest, and that the government action was arbitrary and capricious. *Smith v. City of Bastrop*, No. 1:19-CV-1054-RP, 2021 WL 256823, at *4 (W.D. Tex. Jan. 26, 2021), report and recommendation adopted as modified, No. 1:19-CV-1054-RP, 2021 WL 1432694 (W.D. Tex. Mar. 16, 2021) (Citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiffs have pled and clearly have a property interest in the operation of its business. Because permits and licenses relate to the maintenance of a person's livelihood, "[s]uspension of issued licenses ... involves state action that adjudicates important interests of the licensees." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 220 (5th Cir. 2012) (quotation omitted).

For the foregoing reasons, Plaintiffs properly pled a Fifth and Fourteenth Amendment violation and thus meet the third *Monell* requirement.

## **CONCLUSION & PRAYER**

Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss Amended Complaint in its entirety and grant Plaintiffs all other relief to which they may show themselves justly entitled.

-23-

April 26, 2024                    Respectfully submitted,

                                 */s/ Casey T. Wallace*
                                 Casey T. Wallace
                                 State Bar No. 00795827
                                 Benjamin W. Allen
                                 State Bar No. 24069288
                                 Avery L. Larson
                                 State Bar No. 24132192
                                 Wallace & Allen, LLP
                                 440 Louisiana, Suite 590
                                 Houston, Texas 77002
                                 Telephone: (713) 224-1744
                                 Facsimile: (713) 600-0034
                                 cwallace@wallaceallen.com
                                 ballen@wallaceallen.com
                                 alarson@wallaceallen.com

                                 **COUNSEL FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above and foregoing instrument has been served upon the following in accordance with the Federal Rules of Civil Procedure on April 26, 2024.

Tammy L. Palomino
Dallas City Attorney
Kathleen M. Fones
Assistant City Attorney
Stacy Jordan Rodriguez
Assistant City Attorney
City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622
kathleen.fones@dallas.gov
stacy.rodriguez@dallas.gov

**COUNSEL FOR DEFENDANTS**

*/s/ Casey T. Wallace*
Casey T. Wallace