UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| XTC CABARET (DALLAS), INC. D/B/A XTC CABARET; FINE DINING CLUB, INC. D/B/A SILVER CITY CABARET; COASTER LINE COASTER CLUB INC. D/B/A TIGER CABARET; GUILLERMO BELTRAN DEL RIO TIRADO; DEDRRICK NERO; and RICHARD BOTHMANN, JR., | § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:24-CV-0042-B |
| THE CITY OF DALLAS, THE CITY OF DALLAS POLICE DEPARTMENT, AND OFFICERS EDDIE GARCIA, DEVON POLK, AND CAMERON PETERSON IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES | § § § § § § § | |
| Defendants. | § | |

ORDER

Before the Court is Plaintiffs XTC Cabaret (Dallas), Inc. d/b/a XTC Cabaret ("XTC"), Fine Dining Club, Inc. d/b/a Silver City Cabaret ("Silver City"), and Coaster Line Coaster Club Inc. d/b/a Tiger Cabaret ("Tiger Cabaret")'s Application for Preliminary Injunction (Doc. 27). Also before the Court is Defendant the City of Dallas (the "City")'s Motion to Dismiss Amended Complaint (Doc. 32). For the reasons set forth below, the Court **DENIES** the Application for Preliminary Injunction (Doc. 27) and **DENIES IN PART** the City's Motion to Dismiss (Doc. 32).

# I.

# BACKGROUND

The City recently passed § 41A-14.3(a) of the Dallas City Code (the "Ordinance") which restricts sexually oriented businesses ("SOBs")' hours of operation. Doc. 27, Am. Compl., ¶ 15. The Ordinance provides that "[a] sexually oriented business must be closed for business each day between the hours of 2:00 a.m. and 6:00 a.m." DALL. CITY CODE § 41A-14.3(a). This case primarily challenges the City's alleged policy interpreting and enforcing the Ordinance. *See* Doc. 35, Reply, 3; Doc. 25, Pls.' Br, 1–2. Specifically, Plaintiffs XTC, Silver City, and Tiger Cabaret (collectively "Plaintiffs"),[1] three SOBs operating in Dallas, contend that the City's official policy is that any business with an SOB license—even if that business is not operating as an SOB after 2:00 a.m.—is subject to the hours of operation requirement set forth in the Ordinance. Doc. 25, Pls.' Br, 1–3; Reply, 4–5. And according to Plaintiffs, this policy is unconstitutional. Doc. 27, Am. Compl., ¶¶ 36–54.

The alleged policy at issue in this case stems from a series of correspondences between Plaintiffs and the Dallas Police Department (the "DPD"). *See* Doc. 35, Reply, 5–6. In November 2023, Plaintiffs XTC and Silver City received a letter from Defendants Eddie Garcia, the City's Chief of Police, and Devon Polk, a Major of Police. Doc. 27, Am. Compl., ¶¶ 16–21.  The letter stated:

> [The] Dallas Police Department is notifying you that it will seek criminal charges against you if it is found that you are in violation of Section 41A-14.3 . . . . Pursuant to Dallas City Code, Section 41A-4(e), if the licensee has applied for, and received,

---

[1] There are also three individual Plaintiffs in this case: Guillermo Beltran Del Rio Tirado, Dedrick Nero, and Richard Bothmann. Doc. 27, Am. Compl., ¶¶ 5–7. However, at the preliminary injunction hearing, Plaintiffs' counsel stated that the claims brought by Tirado, Nero, and Bothmann have no bearing on XTC, Silver City, and Tiger Cabaret's request for preliminary injunction. Thus, this Order only addresses the claims brought by the three corporate Plaintiffs.

both a Sexually Oriented Business license and a Dance Hall license, the applicant
must comply with the hours of operation requirement found in Section 41A-14.3(a)
of the Dallas City Code.

Doc. 27-1, Ex. A, 2; *see also* Doc. 27, Am. Compl., ¶¶ 16–17, 21. XTC responded the same day,

outlining how it planned to comply with the Ordinance. Doc. 27, Am. Compl., ¶ 19; Doc. 27-3,

Ex. C, 2. Specifically, XTC explained that it would cease its SOB operations at 2:00 a.m. and begin

operating primarily as a non-SOB at that time (i.e., as a restaurant or dance hall). Doc. 27, Am.

Compl., ¶ 19; Doc. 27-3, Ex. C, 2. On November 29, 2023, Major Polk responded to XTC, stating

that "all businesses with SOB licenses . . . must comply with the hours of operation requirement . .

. . XTC may not operate between 2:00 a.m. and 6:00 a.m." Doc. 27, Am. Compl., ¶ 20; Doc. 27-

4, Ex. D, 2.

According to Plaintiffs, these correspondences evince an official City policy of enforcing

the Ordinance against non-SOB activity[2] after 2:00 a.m. by any business holding an SOB license.

Doc. 25, Pls.' Br, 5. In their view, this policy extends the enforcement of the hours of operation

requirement beyond the language of the Ordinance. *See id.* at 5–7. They claim that the plain

language of the Ordinance only prohibits SOB *activity* after 2:00 a.m., whereas the policy

announced by the DPD requires closure solely based off SOB *licensure*, regardless of the nature of

the business's activities after 2:00 a.m. Doc. 44, Pls.' Resp., 12–13.

Plaintiffs initiated this action on January 4, 2024, contesting the enforcement of the

Ordinance against non-SOB activity after 2:00 a.m. *See* Doc. 1, Compl. They bring § 1983 claims

against the City and state-law claims against three DPD officers[3] in their official and individual

---

[2] Plaintiffs appear to suggest that "SOB activity" only includes the offering of nude entertainment.
*See* Doc. 35, Reply, 4–5.
[3] The individual defendants are Officers Eddie Garcia, Devon Polk, and Cameron Peterson. Doc.
27, Am. Compl., ¶¶ 9–11.

capacities ("Individual Defendants"). Doc. 27, Am. Compl., ¶¶ 8–11. With respect to their claims against the City, Plaintiffs allege that the City's interpretation and proposed enforcement of the Ordinance violates Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments. *Id.* ¶¶ 36–54. Plaintiffs further claim that the Ordinance itself, as applied to non-SOB activity, is unconstitutionally overbroad in violation of the First Amendment. *Id.* ¶ 46. With respect to their claims against the Individual Defendants, Plaintiffs appear to claim the DPD officers committed *ultra vires*[4] acts in threatening to enforce the Ordinance against non-SOB activity after 2:00 a.m. *Id.* ¶ 40.  Plaintiffs' operative complaint also requests the following injunctive relief:

> (a) Defendants are prohibited from arresting any employee or representative of Plaintiffs for operating; (b) Defendants are prohibited from maintaining a physical presence at Plaintiffs' establishments or within 400 meters of their premises for longer than thirty minutes unless investigating criminal activity with probable cause; (c) Defendants are prohibited from closing or attempting to close Plaintiffs' establishments under color of § 41A of the Dallas City Code unless Plaintiffs are actively operating a Sexually Oriented Business featuring nude entertainment in the presence of alcohol after 2:00 a.m. in violation of the Ordinance.

*Id.* ¶ 62.

On February 27, 2024, the Court set a hearing on Plaintiffs' Application for Preliminary Injunction. Doc. 21, Order. Prior to the preliminary injunction hearing, however, the City moved to dismiss the First Amended Complaint. *See* Doc. 32, Mot. Dismiss. The only basis for dismissal the Court considers here is the City's argument that the claims brought by Tiger Cabaret are subject to abstention under *Younger v. Harris. See* Doc. 33, Mot. Dismiss Br., 7–9. Tiger Cabaret's SOB license was recently revoked under § 41A-12 of the City Code. *See* Doc. 34, Defs.' App'x, 12.

---

[4] "An *ultra vires* action is one in which the plaintiff seeks relief in an official-capacity suit against a government actor who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act." *Lazarides v. Farris*, 367 S.W.3d 788, 800 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Section § 41A-12 provides "[a] licensee shall not transfer his license to another, nor shall a licensee operate a sexually oriented business under the authority of a license at any place other than the address designated in the application." DALL. CITY CODE § 41A-12. Because Tiger Cabaret is currently appealing its license revocation in state court, the City argues that the Court should abstain from ruling on the merits of Tiger Cabaret's claims for injunctive relief under *Younger*. Doc. 33, Mot. Dismiss Br., 7–9.

The Court conducted the preliminary injunction hearing on April 29, 2024. *See* Doc. 46, Elec. Minute Entry. At the hearing the parties presented evidence and argument on Plaintiffs' Application for Preliminary Injunction and on the City's Motion to Dismiss under *Younger*. The Court considers the parties' motions below.

## II.

## LEGAL STANDARD

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation omitted). A plaintiff seeking a preliminary injunction must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth requirements "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A preliminary injunction should only be granted if the party seeking the injunction has clearly carried the burden of persuasion on all factors. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## III.

## ANALYSIS

The Court concludes that Plaintiffs are not entitled to a preliminary injunction. The Court's analysis proceeds in three parts. First, the Court determines whether it should abstain from deciding Tiger Cabaret's claims under *Younger v. Harris*. The Court finds abstention under *Younger* is inappropriate here because adjudication of Tiger Cabaret's claims in this case would not interfere with the ongoing state-court proceedings. Second, the Court considers whether the City may be held liable in this § 1983 action under *Monell v. New York City Dept. of Social Services*. While the City may be held liable on the Ordinance, the Court concludes that, to the extent the policy announced by the DPD is inconsistent with the Ordinance, Plaintiffs have not demonstrated that this policy is attributable to the City's final policymaker. Third, the Court finds that Plaintiffs are not likely to succeed on the merits of any of their claims. Consequently, Plaintiffs are not entitled to a preliminary injunction.

A.      Younger *Abstention*

Before turning to the merits of the Application for Preliminary Injunction, the Court must first consider whether it may exercise jurisdiction over Tiger Cabaret's claims for injunctive relief. The City argues that the Court should decline to exercise jurisdiction over Tiger Cabaret's claims under *Younger v. Harris,* 401 U.S. 37 (1971). Doc. 33, Mot. Dismiss Br., 7–9. Tiger Cabaret's license was recently revoked under § 41A-12 of the City Code, and the appeal of Tiger Cabaret's license revocation remains pending in state court. *See* Doc. 34, Defs.' App'x, 12. According to the City, abstention is proper under *Younger* because the Court's resolution of Tiger Cabaret's claims in this case would interfere with the state court's resolution of Tiger Cabaret's appeal. *See* Doc. 33, Mot. Dismiss Br., 7–9. The Court disagrees.

"Under the *Younger* abstention doctrine, 'federal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted.'" *Cesar Portillo v. CAM XV Tr.*, No. 5:20-CV-932-DAE, 2021 WL 2772806, at *4 (W.D. Tex. May 7, 2021) (citing *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004)). Abstention under *Younger* is appropriate where: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (citations omitted).

The Court concludes that *Younger* does not apply because the federal proceedings will not interfere with Tiger Cabaret's state court appeal. "Interference is established whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Id.* at 717 (citations omitted). In this lawsuit, Tiger Cabaret challenges the enforcement § 41A-14.3, which deals with the hours of operation for SOBs. *See generally* Doc. 27, Am. Compl. The ongoing state court proceedings, however, concern a separate section of the Code, § 41A-12, which deals with the transfer of an SOB license. *See* Doc. 34, Defs.' App'x, 12. Thus, any ruling relating to the hours of operation requirement will not interfere with state proceedings concerning the validity of a transfer of an SOB license. *See Bice*, 677 F.3d at 717; *Kleinman v. City of Cedar Park*, No. A-22-CV-00527-LY, 2022 WL 3567352, at *4 (W.D. Tex. Aug. 18, 2022), *report and recommendation adopted*, No. 1:22-CV-00527-LY, 2022 WL 22380885 (W.D. Tex. Nov. 9, 2022); *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) ("*Younger* abstention is not appropriate in this case because the issues raised

in the [federal proceedings] are distinct from the underlying [state] criminal prosecution and would not interfere with it.")

Because a ruling in Tiger Cabaret's favor on its challenge to the hours of operation requirement under the Ordinance would not interfere with Tiger Cabaret's state court challenge to § 41A-12, the Court declines to abstain under *Younger*. As such, the Court **DENIES IN PART** the City's Motion to Dismiss.[5]

B.    *Municipal Liability*

Plaintiffs bring claims against the City under 42 U.S.C. § 1983. Doc. 27, Am. Compl., ¶¶ 26–40. Section 1983 imposes civil liability on "[e]very person who, under color of [state law] . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] . . . ." 42 U.S.C. § 1983. In *Monell v. New York City Dept. of Social Services*, the Supreme Court held that "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978) (emphasis in original). However, at the same time, the Court "recognized a limitation on this liability and concluded that a municipality cannot be made liable by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Instead, municipalities incur liability under § 1983 "when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988).

Thus, to prevail against a municipality under § 1983, "a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a

---

[5] The Court does not consider in this Order any other aspect of the City's Motion to Dismiss aside from the abstention issue as to Tiger Cabaret.

constitutional right."[6] *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022). An official policy may take various forms, although "[i]t usually exists in the form of written policy statements, ordinances, or regulations." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "A policymaker must be one who takes the place of the governing body in a designated area of city administration." *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (citations omitted). The City's final policymaker is the Dallas City Council. *Groden v. City of Dallas*, 826 F.3d 280, 286 (5th Cir. 2016).

There are potentially two policies at issue in this case for purposes of *Monell*. The first is the Ordinance. *See Peterson*, 588 F.3d at 847. There is no dispute that the Ordinance constitutes an official policy for which the City may be sued under § 1983. *See* Doc. 30, Resp., 4. The second is the position announced by the DPD in its correspondence with Plaintiffs stating that the DPD would enforce the Ordinance against any business with an SOB license. *See Peterson*, 588 F.3d at 847. While Plaintiffs' § 1983 claim against the City challenges the constitutionality of both the Ordinance and the DPD's position, in Plaintiffs' view, their case is primarily about this second policy of enforcement. *See e.g.*, Doc. 35, Reply, 3. According to the City, however, the DPD's position is no different from the Ordinance, and therefore, they should be treated as a single policy. Doc. 30, Resp., 4–5. Alternatively, the City argues that the position announced by the DPD was not promulgated by the City's final policymaker—here, the Dallas City Council—and thus the City may not be held liable for any constitutional infirmities therewith. *Id.* at 8–10.

---

[6] In this Section, the Court only considers whether Plaintiffs have established (1) an official policy (2) that was ratified or promulgated by the City's final policymaker. The "moving force" inquiry under *Monell* necessarily intersects with the "likelihood of success on the merits" inquiry with respect to Plaintiffs' Application for Preliminary Injunction. The Court reserves discussion of the merits to Section III.C.

Accordingly, the questions the Court must answer are whether the position announced by the DPD is a policy separate from the Ordinance and, if so, whether that position is attributable to the City. The Court addresses each question in turn.

1.      Whether the DPD's Position is a Separate Policy

The position announced by the DPD is a separate policy because it subjects more businesses to the hours of operation requirement than does the Ordinance.

The Ordinance at issue in this case provides: "A *sexually oriented business* must be closed for business each day between the hours of 2:00 a.m. and 6:00 a.m." DALL. CITY CODE § 41A.14.3. By contrast, the position of the DPD is essentially that "any business with a sexually oriented business *license* must be closed for business each day between the hours of 2:00 a.m. and 6:00 a.m." *See* Doc. 27-1, Ex. A, 2. To determine whether the DPD's position is different than the Ordinance, the Court must consider whether there is a distinction between enforcing the hours of operation requirement against *all business with an SOB license* and enforcing it against all *SOBs*.

Plaintiffs argue that the DPD's position extends enforcement of the Ordinance because the former applies indiscriminately based on licensure whereas the Ordinance only applies to businesses engaged in specific activities (i.e, SOB activities) after 2:00 a.m. *See* Doc. 25, Pls.' Br., 5–7; Doc. 35, Reply, 4–5. In Plaintiffs' view, the plain language of the Ordinance indicates that it only proscribes SOB activities after 2:00 a.m., which apparently means the offering of nude entertainment. Doc. 27, Am. Compl., ¶¶ 30–35; Doc. 35, Reply, 4–5. On Plaintiffs' reading of the Ordinance, therefore, a business need only close if it is offering nude entertainment after 2:00 a.m.—if a business is not offering such entertainment, it is not operating as an SOB, and the Ordinance does not apply. Doc. 35, Reply, 4–5. However, the DPD's position "is directed solely at SOB licensure, regardless of SOB operation." *Id.* at 4. Thus, Plaintiffs argue, the DPD's position is

a different policy than the Ordinance because the DPD would enforce the Ordinance against any business with an SOB license, regardless of their post-2:00 a.m. activities, but the Ordinance would only enforce the hours of operation against businesses offering nude entertainment after 2:00 a.m. *See* Doc. 25, Pls.' Br., 6–7; Doc. 35, Reply, 4–5.

The Court agrees that the DPD's position goes a step further than the Ordinance but for substantially different reasons.

Plaintiffs' premise—that the Ordinance only applies to certain activities—is flawed; the Ordinance prohibits *all activities* engaged in by *certain business*, namely, SOBs. The Ordinance clearly states that "sexually oriented businesses must be closed for business each day between the hours of 2:00 a.m. and 6:00 a.m." DALL. CITY CODE § 41A-14.3. The Ordinance does not state "sexually oriented businesses must be closed for [*sexually oriented*] business each day between the hours of 2:00 a.m. and 6:00 a.m." or that "sexually oriented businesses must be closed for business each day between the hours of 2:00 a.m. and 6:00 a.m., [*unless the business is not engaging in sexually-oriented-business activity*]." [7] *See id.* Thus, the DPD's position, which extends enforcement of the hours of operation of requirement irrespective of a business's specific post-2:00 a.m. activities, is not inconsistent with the Ordinance for the reason articulated by Plaintiffs; both the DPD's

---

[7] Plaintiffs attempt to maneuver around the Ordinance's unequivocal language by directing the Court to a different provision of the City Code, which states "[a] person who operates a sexually oriented business and possesses a dance hall license shall comply with the requirements and provisions of this chapter as well as the requirements and provisions of Chapter 14 of this code when applicable." DALL. CITY CODE § 41A-4(e). Plaintiffs argue that when a business possesses both a dance hall license and SOB license, it need only comply with the hours of operation requirement when it is "operat[ing] a sexually oriented business." *See* Doc. 44, Pls.' Resp., 13. Plaintiffs are mistaken. Section 41A-4(e) merely governs *who* must comply with the regulations of SOBs, not *when* a person must comply the same. A person who operates an SOB at any time of day is a "person who operates a sexually oriented business," and thus is subject to the requirements of the SOB chapter notwithstanding the possession of a dance hall license or its operations at any given moment.

position and the Ordinance prohibit all activity after 2:00 a.m. by certain businesses.[8] *Compare* Doc. 27-1, Ex. A, 2, *with* DALL. CITY CODE § 41A-14.3. Rather, the question is whether the DPD's position—enforcing the Ordinance against all businesses with SOB licenses—extends the hours of operation requirement to a different class of businesses: non-SOBs. In this regard, the Court must determine whether every business with an SOB license is an SOB. After review of the relevant provisions of the City Code, the Court concludes that SOB licensure, by itself, does not make a business an SOB.

The term "sexually oriented business" is defined in the Dallas City Code:

[Sexually Oriented Business] means an adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion picture theater, escort agency, nude model studio, or other commercial enterprise the primary business of which is the offering of a service or the selling, renting, or exhibiting of devices or any other items intended to provide sexual stimulation or sexual gratification to the customer.

DALL. CITY CODE § 41A-2(31). Nowhere in this definition do the terms "license" or "licensure" appear. Nor do these terms appear in the definitions of the seven enumerated classes of SOBs; instead, each is uniformly defined by a business's regular *operations* or primary *purpose*. *See id.* §§ 41A-2(2)–(4), (7)–(8), (17), (23). Licensure, on the other hand, merely *enables* a business to operate as an SOB legally. *See id.* § 41A-4(a) ("A person commits an offense if he operates a sexually oriented business without a valid license issued by the city for the particular type of business."). But that a business may legally operate as an SOB does not necessarily mean that the business in fact operates as an SOB or intends to do the same. For example, consider a nightclub that offers live entertainment but is unsure whether it is an "adult cabaret," one of the enumerated

---

[8] Plaintiffs also argue that they are not SOBs after 2:00 a.m. because they do not "primarily" engage in SOB-activity during this time. Doc. 35, Reply, 4–5. But Plaintiffs primarily engage in SOB activities for a majority of the time they are open, which is what renders them SOBs subject to the Ordinance. *See infra* III.C.1.i.

classes of SOBs. DALL. CITY CODE § 41A-2(31). Out of an abundance of caution, the nightclub obtains an SOB license. In this situation, it may well be the case that the nightclub was never an adult cabaret or any other form of SOB. And there is nothing in the City Code that would support the conclusion that this nightclub has now become an SOB by virtue of its obtaining a license. Thus, licensure, by itself, does not make a business a SOB, as that term is defined in the City Code.

Applying the foregoing to the position of the DPD, which requires all businesses with SOB licenses to close after 2:00 a.m., the Court concludes that it is a different policy than the Ordinance, which requires businesses who are in fact SOBs to close.

2.    Whether the Dallas City Council Promulgated the DPD's Policy

While the policy announced by DPD is distinct from the Ordinance, the City may only be held liable for that policy if it was promulgated or ratified by the City's final policymaker—the Dallas City Council. The Court concludes that the policy announced by the DPD was likely not promulgated or ratified by the Dallas City Council.

Plaintiffs rely almost exclusively on *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016) to argue that the policy announced by the DPD is attributable to the City. *See* Doc. 25, Br., 5–6; Doc. 35, Reply, 5–6; Doc. 44, Pls.' Resp., 15–16. In *Groden*, a plaintiff brought a § 1983 action against the City of Dallas after he was arrested pursuant to an alleged "crackdown policy." 826 F.3d at 282. In his complaint, plaintiff averred that the "crackdown policy" consisted of arresting vendors selling goods in Dealey Plaza without a legal basis or probable cause in retaliation "for [the vendors'] annoying-but-protected speech." *Id*. at 282–83, 286. Plaintiff also alleged that the City "publicly announced" this policy and that the "[C]ity's official 'spokesman, . . . gave media interviews describing the new policy." *Id*. at 286. The district court dismissed plaintiff's claims against the City on 12(b)(6) grounds, reasoning that he did not plausibly establish that the alleged

policy was attributable to the City. *Id.* at 283. The Fifth Circuit reversed, explaining that "[t]he allegation that an official city spokesperson announced an official city policy allows for a reasonable pleading inference that this crackdown policy was attributable to an official policy made by the policymaker of the city (i.e., the city council)." *Id.* at 286.

In Plaintiffs' view, their case is no different than *Groden*. They claim that that Defendants Eddie Garcia, Chief of Police, and Devon Polk, Major of Police, are the City's spokespersons. Doc. 25, Br., 5–6; Doc. 35, Reply, 5–6. And like *Groden*, Garcia and Polk publicly announced the City's enforcement policy in a letter forwarded to Plaintiffs and again in an email correspondence between Polk and Plaintiffs. Doc. 25, Br., 5–6; *see also* Doc. 27-1, Ex. A, 2; Doc. 27-4, Ex. D, 2. Therefore, Plaintiffs contend that they have established that the policy announced by the DPD is attributable to the City. Doc. 25, Br., 5–6; 35, Reply, 5–6.

The Court is not convinced that *Groden* dictates the outcome here. Importantly, *Groden* was decided at the 12(b)(6) stage, where courts accept well pleaded allegations as true. 826 F.3d at 282–83. As *Groden* itself acknowledged,

> pleading a complaint sufficient to withstand a 12(b)(6) motion to dismiss most certainly does not mean that [plaintiff] will ultimately prevail. If, for example, the city proves that the city council did not directly or indirectly promulgate the crack-down policy, then the city may well be entitled to summary judgment. *We express no opinion on the merits of this case in any other procedural posture*.

*Id.* at 286 n.8 (emphasis added). This case, of course, has proceeded beyond the pleading stage. Plaintiffs now seek a preliminary injunction and thus have the burden of demonstrating that they are likely to succeed on the merits of their claims against the City. *See Byrum v. Landreth*, 566 F.3d 442, 445–46 (5th Cir. 2009). As such, it is not enough that Plaintiffs baldly assert that Defendants Garcia and Polk are the City's spokespersons who announced a City policy—they must make some showing which demonstrates that this assertion is likely true. Plaintiffs have failed to do so.

- 14 -

At the preliminary injunction hearing, Polk testified that he drafted the letter delivered to Plaintiffs (on behalf of Garcia) with the help of the City's attorneys. He further testified that the letter merely reflected his understanding of the requirements of the Ordinance and that he was not delegated authority to set any policy in the letter. Polk also testified that he was not directed to draft the letter by the City Council; nor did the City Council review the letter before it was sent. That Polk was not authorized—and did not intend—to announce a new City policy in conjunction with the fact that the City Council did not review the contents of Polk's correspondence undercuts the contention that the City Council "either directly or indirectly promulgate[d]" the policy announced therein. *See Groden*, 826 F.3d at 286 n.8.

Aside from Polk's testimony, Plaintiffs point to the correspondences themselves to establish that Polk and Garcia were acting as spokespersons. These correspondences, however, do not support Plaintiffs' position. Doc. 25, Br., 5–6; Doc. 35, Reply, 5–6. Unlike *Groden*, where the spokesperson allegedly announced the "crackdown policy" publicly through the media, the DPD's communications here were not addressed to the general public—Garcia and Polk's letter was sent solely to SOB-licensees, and Polk's email was only sent to XTC. *Compare* Doc. 27-1, Ex. A, 2; Doc. 27-4, Ex. D, 2, *with Groden*, 826 F.3d at 286. That Garcia and Polk's messages were targeted directly at the subset of businesses that were subject to the DPD's policy, rather than to the general public through a media outlet further undercuts the claim that these individuals were in fact City spokespersons. *See* Doc. 27-1, Ex. A, 2; Doc. 27-4, Ex. D, 2. Moreover, whereas the alleged spokesperson in *Groden* announced the *City's* policy, the correspondences here are, on their face, announcing the *DPD's* policy. The DPD's letter clearly states that the "*Dallas Police Department* is notifying you" that possessing an SOB license subjects the licensee to the Ordinance; the letter, however, does not suggest that the "City of Dallas" holds the same position. *See* Doc. 27-1, Ex. A,

2. While Plaintiffs made much of the fact that the correspondences were sent on the City's letterhead at the preliminary injunction hearing, this does not overcome the content of these communications and the contexts in which they were sent.

Because Plaintiffs advance no other argument linking the position announced by the DPD to the City, the Court concludes that Plaintiffs have failed to demonstrate that this policy was promulgated or ratified by the Dallas City Council. Thus, the DPD's position likely does not constitute an official City policy under *Monell*.

***

Plaintiffs' § 1983 claims against the City challenge the constitutionality of the Ordinance as well as the policy announced by the DPD. While they are separate policies, Plaintiffs have not shown that the policy announced by the DPD is the City's official policy. As such, it appears that the City may not be held liable for the DPD's policy in a § 1983 action. Having failed to show that the City may be held liable for the policy announced by the DPD, Plaintiffs necessarily cannot show they are likely to prevail on the merits of their constitutional claims directed at this policy. The Court identifies such claims below.

C.      *Likelihood of Success on the Merits*

Having resolved the abstention and *Monell* issues, the Court turns to the substance of Plaintiffs' Application for Preliminary Injunction. To be entitled to a preliminary injunction, Plaintiffs must first show they are likely to succeed on the merits of at least one claim.

Plaintiffs bring a total of five claims, four of which are constitutional claims against the City under § 1983. Plaintiffs' § 1983 constitutional challenges are directed at both (a) the Ordinance, as applied to an SOB's non-SOB activity after 2:00 a.m., and (b) the DPD's policy enforcing the Ordinance against any business with an SOB license. Plaintiffs assert  two constitutional claims

against the Ordinance and two constitutional claims against the DPD's policy. With respect to Plaintiffs' constitutional challenges to the Ordinance, they claim the Ordinance is (1) vague in violation of the Due Process Clause and (2) overbroad in violation of the First Amendment. With respect to their constitutional challenges to the DPD's policy, they claim the DPD's policy is (3) is arbitrary in violation of the Due Process Clause and (4) retaliatory in violation of the First Amendment.[9] As explained in the preceding section, however, Plaintiffs have not shown that the City is responsible for the DPD's policy under *Monell*. Plaintiffs are thus not likely to prevail on their substantive due process or First Amendment retaliation claims because those challenges are directed at the DPD's policy and the City may not be held liable for that policy in a § 1983 action. While this ruling obviates the need to further consider Plaintiffs' two constitutional challenges to the DPD's policy, to remove any doubt as to the likelihood of success analysis, the Court will consider the merits of those claims here.

Plaintiffs' fifth and final claim is an *ultra vires* claim brought against the Individual Defendants. They contend the Individual Defendants acted *ultra vires* in enforcing the Ordinance's hours of operation requirement against non-SOB activity after 2:00 a.m. in contravention of the Ordinance's plain language.

The Court concludes that Plaintiffs are not likely to succeed on the merits of their § 1983 claims or their *ultra vires* claims, and therefore, denies Plaintiffs' Application for Preliminary Injunction. The Court's analysis begins by considering the merits of Plaintiffs' constitutional

---

[9] Plaintiffs also bring claims against the City under the Fourth Amendment. See Doc. 27, ¶¶ 27–49. However, Plaintiffs did not address their Fourth Amendment claim in their briefing or at the preliminary injunction hearing. As Plaintiffs do not argue that they are entitled to injunctive relief on Fourth Amendment grounds, the Court does not address that claim here.

challenges before turning to their *ultra vires* claims against the Individual Defendants. In analyzing Plaintiffs' § 1983 constitutional claims, the Court discusses Plaintiffs' due process challenges separately from their First Amendment challenges.

1.   Due Process Clause

Plaintiffs bring two Due Process Clause claims against the City under § 1983. [10] First, they assert a vagueness challenge against the Ordinance, claiming that enforcement of the hours of operation requirement against all businesses with SOB licenses conflicts with the plain language of the Ordinance, and thus, Plaintiffs lack fair notice of the conduct subject to criminal punishment. Doc. 27, Am. Compl., ¶¶ 50–54; *see* Doc. 25, Br., 6–7. Second, they assert a substantive due process challenge against the DPD's policy, contending the policy announced by the DPD is arbitrary because it does not provide for enforcement of the hours of operation requirement against businesses operating as SOBs without a license to do so. Doc. 27, Am. Compl., ¶¶ 50–54; *see* Doc. 25, Br., 7 n.4.

The Court concludes that Plaintiffs are not likely to prevail on the merits of either due process claim. The vagueness challenge to the Ordinance is not likely to succeed because Plaintiffs' conduct is clearly proscribed by the Ordinance. This threshold conclusion implicates Plaintiffs' next due process claim: their substantive due process challenge to the DPD's policy. Given that the Ordinance clearly requires Plaintiffs to close after 2:00 a.m., Plaintiffs' injury (i.e., being forced to close at 2:00 a.m.) would not be redressed by an invalidation of the DPD's policy. Thus, Plaintiffs

---

[10] Plaintiffs due process claims are purportedly brought under both the Fifth and Fourteenth Amendments. *See* Doc. 27, Am. Compl., ¶¶ 30–54; Doc. 44, Pls.' Resp., 22–23. "However, the due process clause of the Fifth Amendment applies only to actions of the federal government." *Velazquez v. City of Westwego*, 531 F. Supp. 3d 1142, 1154 (E.D. La. 2021). Thus, Plaintiffs' contention that the City violated their Fifth Amendment due process rights necessarily fails. Only Plaintiffs' Fourteenth Amendment due process claim is viable in this case.

lack standing to challenge the DPD's policy on substantive due process grounds. But to remove all doubts from this analysis, the Court considers the merits of Plaintiffs' substantive due process challenge to the DPD's policy and finds that they are unlikely to prevail on this claim.

       i.    Vagueness

Plaintiffs' first due process argument is essentially an as-applied vagueness challenge to the Ordinance itself, although Plaintiffs do not label their claims as such.[11] They claim that the language of the Ordinance is clear in that only SOB activity is subject to the hours of operation requirement—and for this reason, Plaintiffs argue that they are without fair notice that non-SOB activity is subject to punishment under the Ordinance. Doc. 25, Br., 2, 6–7. This is a quintessential as-applied vagueness challenge. *Cf. Muniz v. City of San Antonio*, 476 F. Supp. 3d 545, 557 (W.D. Tex. 2020); *see also City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). "When determining whether an ordinance is unconstitutionally vague as applied to certain conduct, the court examines the language used in the ordinance and determines whether an ordinary person would have been able to determine that the relevant conduct was prohibited." *Muniz*, 476 F. Supp. 3d at 555. However, "a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause . . . for lack of notice." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010); *see also Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff

---

[11] Plaintiffs maintain that their due process challenge is solely directed at the policy, not the Ordinance. Doc. 35, Reply, 5 n.5. However, to the extent Plaintiffs argue that the DPD's policy itself is vague, the Court disagrees. A criminal law may be unconstitutionally vague for two, independent reasons: "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). The policy itself is not vague for either reason. First, an ordinary person would understand that a policy prohibiting businesses with an SOB license to close after 2:00 a.m. prohibits any business with such a license from operating in any manner after 2:00 a.m. *See id.* Indeed, Plaintiffs have only pursued this litigation because the policy is clear. Second, the policy does not authorize arbitrary enforcement because law enforcement is given no discretion in enforcing the policy— every business with a license must be closed. *See id.* at 60–61.

who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Here, Plaintiffs' vagueness challenge fails because their conduct is clearly proscribed by the Ordinance. *See id.* As previously discussed,[12] the Ordinance prohibits all activities after 2:00 a.m. by certain businesses—SOBs. DALL. CITY CODE § 41A-14.3. The policy announced by the DPD likewise prohibits all activities after 2:00 a.m., but by a slightly different class of business—all businesses with SOB licenses. *See* Doc. 27-1, Ex. A, 2. To show that their conduct is not clearly prohibited under the Ordinance, Plaintiffs must establish that they fall within the small class of businesses covered by the DPD's policy but not the Ordinance: businesses with SOB licenses that are not SOBs. *See Holder*, 561 U.S. at 20. Plaintiffs have failed to make such a showing.

Although Plaintiffs concede that they are SOBs for a majority of the day, *see* Doc. 27, Am. Compl., ¶¶ 15, 34, they argue that they are not SOBs from the hours of 2:00 a.m. to 4:00 a.m. because they are not engaged in SOB activity during this time. Doc. 35, Reply, 4–5. Plaintiffs' argument proceeds in three parts. *See* Doc. 25, Br., 6–7. First, they note that the definition of "sexually oriented business" includes a "commercial enterprise the *primary business of which* is the offering of a service . . . intended to provide sexual stimulation or sexual gratification to the customer." *Id.* at 6 (citing DALL. CITY CODE § 41A-2(31)). Second, Plaintiffs assert that after 2:00 a.m., their primary business "is that of a restaurant offering food and non-alcoholic beverages," not "offering of a service . . . intended to provide sexual stimulation or sexual gratification to the customer." Doc. 35, Reply, 4–5. Third, Plaintiffs argue that because they are not primarily engaged

---

[12] *See supra* III.B.1.

in SOB activities after 2:00 a.m., they are not SOBs during this time, and thus the Ordinance does not prohibit their proposed operations. *Id.*

The Court is not convinced. To begin, Plaintiffs have failed to consider the complete SOB definition. As pertinent here, the City Code defines "sexually oriented business" as an "*adult cabaret . . . or* other commercial enterprise the primary business of which is the offering of a service . . . intended to provide sexual stimulation or sexual gratification to the customer." DALL. CITY CODE § 41A-2(31) (emphasis added). While plaintiffs contend their "primary business" after 2:00 a.m. is not the offering of services intended to provide sexual stimulation or gratification, this portion of the SOB definition does not apply to the enumerated classes of SOBs, such as adult cabarets, under the "last antecedent rule." *See Laredo Rd. Co. v. Maverick Cnty.*, 389 F. Supp. 2d 729, 735 (W.D. Tex. 2005). The last antecedent rule posits that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Here, this would mean that the "the primary business of which" modifies only "other commercial enterprise," not the enumerated classes of SOBs, such as adult cabarets. *See id.* And in this case, there is no dispute that Plaintiffs fall within the definition of "adult cabarets," and thus constitute SOBs, regardless of their claimed "primary" operations at any given moment of the day. *Laredo Rd. Co.*, 389 F. Supp. 2d at 735; *Meijas v. Texas*, No. 04-01-00048-CR, 2002 WL 112534, at *1 (Tex. App.—San Antonio Jan. 30, 2002, pet. ref'd); *8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 862 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

But even assuming that the "primary business" portion of the definition applied to adult cabarets, the Court fails to see how Plaintiffs' operations for two hours on given day is indicative of Plaintiffs' "primary business" under the Ordinance. At the preliminary injunction hearing, Plaintiffs' representatives testified that Plaintiffs operate as SOBs from 12 p.m. to 2:00 a.m., as

dance halls for the next two hours, close, and then re-open as SOBs. Plaintiffs would argue that although they are SOBs 87% of the time (fourteen out of sixteen hours), their primary business is not "to provide sexual stimulation or sexual gratification to the customer"—this argument strains credulity. Doc. 35, Reply, 4–5; *see* Doc. 25, 6–7. Finally, to the extent Plaintiffs propose that their classification as an SOB depends on their primary operations at any given moment, the Court disagrees. Whether a business is an SOB depends on its operations *generally* or its *primary* purpose, not the nature of its operations during a specific, limited window of time. *See* DALL. CITY CODE § 41A-2(31). To allow a business to skirt the requirements of Chapter 41A whenever it is not engaged in the specific activity that renders it an SOB would vitiate the City's ability to enforce the law.

In sum, Plaintiffs have failed to show that the Ordinance vague as to them. Plaintiffs are SOBs notwithstanding the fact that they plan to engage in non-SOB activity after 2:00 a.m. The Ordinance requires SOBs to be closed after 2:00 a.m. regardless of the business's intended activities. Thus, their conduct clearly falls within the scope of the Ordinance independent of the policy. In other words, an ordinary person would be able to ascertain that SOBs must be closed after 2:00 a.m. and that Plaintiffs are SOBs notwithstanding the fact they do not engage in SOB activity at certain times. The Ordinance, therefore, is not vague as applied to Plaintiffs.

       ii.      Substantive Due Process

Plaintiffs next argue that the policy announced by the DPD is arbitrary. Specifically, they claim that enforcing the hours of operation requirement based on licensure is arbitrary because it is both over- and under-inclusive. The policy is over-inclusive, Plaintiffs argue, in that not every licensee is an SOB, and it is under-inclusive in that some unlicensed businesses are SOBs. Plaintiffs' arbitrariness argument invokes substantive due process. *Marco Outdoor Advert., Inc. v. Reg'l Transit*

*Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) ("Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." (citations omitted)).

Plaintiffs are not likely to succeed on the merits of this claim for three, independent reasons. First, as previously discussed, Plaintiffs have not sufficiently shown that the policy announced by the DPD is the City's official policy—thus, even if this policy violated Plaintiffs' substantive due process rights, the City is likely not responsible for that policy under *Monell. See supra* III.B.2.

Second, because the Court has determined that Plaintiffs' proposed activities fall clearly within the scope of the Ordinance, they are likely without standing to challenge the arbitrariness of the DPD's policy. Article III of the United States Constitution limits the subject-matter jurisdiction of the federal courts to certain "Cases" and "Controversies." U.S. CONST. art III, § 2. "In an attempt to give meaning to Article III's 'case or controversy requirement,' the courts have developed a series of principles termed 'justiciability doctrines.'" *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). One such doctrine is that of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The essence of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008) (citations omitted). "In order to have standing, 'a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury." *Id.* (citing *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir.2007)). "But standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "To the contrary, 'a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'" *Town of Chester, N.Y. v. Laroe*

*Ests., Inc.*, 581 U.S. 433, 439 (2017) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

In this case, Plaintiffs' alleged injury—being forced to close at 2:00 a.m. and threatened enforcement of the Ordinance—would likely not be redressed by a favorable judgment on their substantive due process claim.  *See generally* Doc. 27, Am. Compl. "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). "And this requires a plaintiff to show that a favorable decision will likely redress the injury." *Greathouse v. Cap. Plus Fin. LLC*, No. 4:22-CV-0686-P, 2023 WL 5759250, at *5 (N.D. Tex. Sept. 6, 2023) (Pittman, J.). The problem here is that, notwithstanding the policy announced by the DPD, Plaintiffs would still be required to cease operation after 2:00 a.m.—the Ordinance itself requires Plaintiffs to close independent of the DPD's policy. Thus, even if Plaintiffs were to prevail on their substantive due process claim against the DPD's policy, they would still be prohibited from engaging in any post-2:00 a.m. activities under the express terms of the Ordinance. *See Greathouse*, 2023 WL 5759250, at *5; *see also Harp Advert. Illinois, Inc. v. Vill. of Chicago Ridge*, 9 F.3d 1290, 1292 (7th Cir. 1993).

Third, even aside from the *Monell* and standing issues, Plaintiffs' substantive due process challenge lacks merit. "[S]ubstantive due process only protects against arbitrary action of government, and under the shocks the conscience standard, only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Sterling v. City of Jackson*, No. 3:22-CV-531-KHJ-MTP, 2024 WL 420884, at *5 (S.D. Miss. Feb. 5, 2024) (citations and alterations omitted). Here, Plaintiffs claim that the DPD's policy violates their substantive due process rights because it only enforces the Ordinance against SOB licensees. *See* Doc. 27, Am. Compl., ¶¶ 50–54.  This policy is arbitrary, Plaintiffs argue, because not all licensees are SOBs, and not all SOBs

have SOB licenses. The Court disagrees that the policy is arbitrary. *See Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th Cir. 1997) ("[T]he due process clause, of its own force, requires at a minimum that state action be supportable by some legitimate goal and that the means chosen for its achievement be rational, i.e., it is of no consequence that the state's method is over-inclusive or under-inclusive, so long as its legitimate goal may be attained by the means chosen.").

It is hardly irrational to subject SOB licensees to the SOB Ordinance as a means of advancing the City's legitimate goal in regulating the secondary effects of SOBs. *See id*. Indeed, though Plaintiffs are correct that the DPD's policy is theoretically over-inclusive in the sense that not every business with an SOB license is an SOB, they have not identified any such business that in fact exists. Nor does the fact that the DPD's policy is directed toward SOB licensees—rather than toward all SOBs—render the DPD's policy arbitrary. *See id*. First, the Court notes that the DPD's letter which allegedly announced the policy was specifically sent to businesses with SOB licenses; it makes sense that the content of this correspondence be limited to information pertinent to the recipient (i.e., the licensee). *See* Doc. 27-1, Ex. A, 2 ("Dear [SOB} License Holder, Owner, Manager, Person in Charge."). Second, the policy does not exist in a vacuum; it operates in conjunction with the Ordinance. *See* DALL. CITY CODE § 41A-14.3. Thus, even if the DPD's policy did not cover unlicensed SOBs, such businesses would be covered by the Ordinance itself. *See id*.; *supra* III.B.1. Third, Plaintiffs' own pleadings do not support the contention that the City fails to enforce the Ordinance against unlicensed businesses. Plaintiffs allege that individuals at Malibu nightclub were "arrested for allegedly operating a sexually oriented business after 2:00 a.m." *See* Doc. 27, Am. Compl., ¶ 28. At the initial temporary restraining order hearing, however, Plaintiffs' counsel indicated that "Malibu . . . does not have a sexually-oriented business license." Doc. 19, Transcript, 34. This indicates that the City has at least attempted to enforce the hours of operation

requirement against what it believed to be an SOB operating without a license. In sum, the Court cannot say that the policy, which classifies all businesses with SOB licenses as SOBs, is so arbitrary as to shock the conscience.

Accordingly, the Court concludes that Plaintiffs are not likely to succeed on the merits of their substantive due process claim.

2.    First Amendment

Next, the Court turns to Plaintiffs' First Amendment claims. They bring two First Amendment challenges: a retaliation claim against the DPD's policy and a *City of Renton v. Playtime Theatres* challenge to the Ordinance as applied to non-SOB activity. They are not likely to succeed on the merits of either claim.

i.    Retaliation

Plaintiffs argue that the DPD's policy, which enforces the Ordinance against all businesses with SOB licenses, retaliates against Plaintiffs for their prior protected expression (i.e., exotic dancing). Doc. 25, Br., 8–9. Specifically, Plaintiffs claim that the City's "retaliation is enforcing the SOB Ordinance against non-SOB activity because of [Plaintiffs'] form of expression at other times." Doc. 44, Pls.' Resp., 16–17. While Plaintiffs argue that the DPD's policy itself is retaliatory, they are not likely to succeed on the merits of that claim for the same three reasons their substantive due process challenge likely fails. First, the policy announced by the DPD is likely not the City's official policy under *Monell*, and thus the City may not be held liable for the constitutional infirmities therewith in a § 1983 action. *See supra* III.B.2. Second, Plaintiffs are without standing. The injuries allegedly sustained by the DPD's purported retaliatory policy would not be redressed by injunctive relief as Plaintiffs are independently subject to closure under the

Ordinance. *See Greathouse*, 2023 WL 5759250, at \*5. Third, Plaintiffs have not shown they are likely to succeed on the merits of this claim.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Batyukova v. Doege*, 994 F.3d 717, 729–30 (5th Cir. 2021) (citations omitted). To establish a First Amendment retaliation claim, Plaintiffs must demonstrate "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "[A] plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Specifically, retaliatory animus "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citing *Hartman*, 547 U.S. at 260 (2006).

Here, Plaintiffs failed to establish the second or third elements of their retaliation claim with respect to the policy announced by the DPD. As for the second element, Plaintiffs have not shown that the policy chills constitutionally protected activity. *See Keenan*, 290 F.3d at 258. Plaintiffs claim that the DPD's policy prevents them from operating as dance halls or restaurants from 2:00 a.m. to 4:00 a.m.[13] *See* Doc. 25, Br. 6–7; Doc. 27, Am. Compl., ¶¶ 19–24; Doc. 44, Pls.' Resp., 12-14. Even accepting this as true, operating a dance hall or restaurant is not a

---

[13] As previously explained, Plaintiffs are incorrect in arguing that the policy is what requires them to close; it is the Ordinance that mandates Plaintiffs' closure. *See supra* III.C.1.i.

constitutionally protected activity. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("[W]e do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance halls."). Instead, the protected activity at issue here is Plaintiffs' SOB activities, meaning the offering of nude dancing at their respective establishments. *See Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 509 (5th Cir. 2021) ("[T]he Supreme Court has held that nude dancing constitutes expressive conduct and is given First Amendment protection."); Doc. 25, Br., 8–9. And there is no dispute that Plaintiffs are free to engage in this sexually explicit activity under both the Ordinance and the policy before 2:00 a.m.; there is further no dispute that Plaintiffs are prohibited from engaging in SOB activity (i.e., expressive conduct) after this point under the Ordinance. *See generally* Doc. 35, Reply; Doc. 44, Pls.' Resp. Plaintiffs have not shown that a policy, which they claim prohibits certain non-expressive activity after 2:00 a.m., chills their expressive activity prior to 2:00 a.m.

As for the third element, Plaintiffs failed to demonstrate that retaliatory animus caused the DPD to promulgate the policy. *See Keenan*, 290 F.3d at 258. By its terms, the policy announced by the DPD only enforces the Ordinance based on licensure. *See* Doc. 27-1, Ex. A, 2. As Plaintiffs made abundantly clear in their papers and at the preliminary injunction hearing, that a business possesses an SOB license does not necessarily make it an SOB, much less an SOB which is engaged in protected expressive activity. *See e.g.*, Doc. 35, Reply, 4 ("The evidence will show that there are SOB licensees who do not operate as SOBs at any time."). If licensure is not indicative of speech, then the Court fails to see how a policy targeting licensure relates to speech at all. For this reason, Plaintiffs cannot show that the retaliatory animus was the but-for cause of any injury as is required to sustain a First Amendment retaliation claim. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) ("[Retaliatory motive] must be a 'but-for' cause [of a plaintiff's injury], meaning that the adverse

action against the plaintiff would not have been taken absent the retaliatory motive."). Moreover, the testimony taken at the preliminary injunction hearing indicates that the DPD's policy is simply a good faith attempt to enforce the terms of the Ordinance. In this regard, it is likely that the passage of the Ordinance was the impetus for the policy, not Plaintiffs' prior speech.

In short, Plaintiffs' claim that the policy announced by the DPD is retaliatory under the First Amendment is likely to fail.

ii.     Overbreadth/*City of Renton v. Playtime Theatres*

Plaintiffs also bring an as-applied First Amendment challenge to the Ordinance under *City of Renton v. Playtime Theatres,* 475 U.S. 41 (1986). Specifically, they claim that the Ordinance does not withstand intermediate scrutiny as applied to non-SOB activity after 2:00 a.m. because the City did not consider evidence linking an SOB's non-SOB activity to the deleterious secondary effects targeted by the Ordinance. *See* Doc. 25, Br., 9–11.

Before the Court proceeds to the *Renton* analysis, however, there is a threshold question: whether the First Amendment applies at all. Plaintiffs seek to operate primarily as dance halls or restaurants after 2:00 a.m.; however, the First Amendment affords Plaintiffs no right to operate as such. *See Stanglin*, 490 U.S. at 25 ("[W]e do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance halls."). Thus, the Ordinance, as applied to Plaintiffs' proposed non-SOB activity, does not appear to implicate the First Amendment. And if the First Amendment does not apply, there is no basis to subject the Ordinance to First Amendment scrutiny. *See id.* ("The Dallas ordinance, therefore, implicates no suspect class and impinges on no constitutionally protected right. The question remaining is whether the classification engaged in by the city survives 'rational-basis' scrutiny.").

Plaintiffs acknowledged at the preliminary injunction hearing that their proposed post-2:00 a.m. activities were not protected under the First Amendment. However, they argued that it was violative of the First Amendment to prohibit Plaintiffs from engaging in certain activities—even those not protected under the First Amendment—in retaliation for Plaintiffs' prior protected expression. *See* Doc. 25, Br., 8–9. But, as discussed above, Plaintiffs are not likely to succeed on the merits of their First Amendment retaliation claim, and thus, the sole justification for subjecting the Ordinance, as applied to non-SOB activity, to First Amendment scrutiny has vanished. Accordingly, it appears that Plaintiffs' as-applied challenge to the Ordinance cannot proceed under the First Amendment. *See Stanglin*, 490 U.S. at 25.

Nevertheless, because Plaintiffs have previously intimated that they *might* engage in non-SOB activity after 2:00 a.m. which could conceivably be protected under the First Amendment, *see* Doc. 27, Am. Compl., ¶ 19 ("[Plaintiffs'] response further explained that from time to time there would be artistic shows after 2:00 a.m."), the Court proceeds to analyze the Ordinance under *Renton*.

The parties agree that, to the extent the First Amendment is applicable, intermediate scrutiny[14] governs Plaintiffs' as-applied challenge to the Ordinance. *See* Doc., 35, Reply, 1; Doc. 30, Resp., 14. To withstand intermediate scrutiny, the Ordinance must be "'designed to serve a substantial governmental interest and allow[] for reasonable alternative avenues of communication.'" *Ass'n of Club Executives*, 83 F.4th at 963–34 (citing *Renton*, 475 U.S. at 50). "An

---

[14] Under *Renton*, a court first must determine whether an SOB regulation is content-neutral or content-based. *Ass'n of Club Executives*, 83 F.4th at 964. If the regulation is content-neutral, it is subject to intermediate scrutiny; if it is content-based, it is subject to strict scrutiny. *Id.* A regulation is content-neutral if it is: (1) a time, place, and manner restriction and (2) designed to combat the undesirable secondary effects of businesses that purvey sexually explicit materials. *Id.*

SOB regulation is 'designed to serve a substantial government interest' when the municipality can 'provide evidence that supports a link' between the regulated business and the targeted secondary effects" under a reasonable belief standard. *Id.* at 965–66 (alterations omitted) (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434, 437 (2002)); *see also Hegar*, 10 F.4th at 510.

The Fifth Circuit has already found that the Ordinance is likely to withstand intermediate scrutiny. *See Ass'n of Club Executives*, 83 F.4th at 969. Plaintiffs argue that their First Amendment challenge to the Ordinance is not foreclosed by that case because here Plaintiffs contest the constitutionality of the Ordinance as applied to non-SOB activity. *See* Doc. 35, Reply, 2–3. While the Court is not entirely convinced that *Ass'n of Club Executives*' holding is as limited as Plaintiffs would prefer (i.e., to SOBs specifically engaging in SOB activity after 2:00 a.m.), even if it was, the Court concludes that Plaintiffs are not likely to succeed on the merits of their claim.

The stated purpose of the Ordinance is to "reduce crime and conserve police and fire rescue resources by requiring sexually oriented businesses to be closed for business between the hours of 2:00 a.m. and 6:00 a.m." Doc. 34, Defs.' App'x, 3. The question here is whether the City considered evidence which would support the reasonable belief that an SOB's non-SOB activity after 2:00 a.m. was linked to the adverse secondary effects (i.e., increases in crime) targeted by the Ordinance. *See Ass'n of Club Executives*, 83 F.4th at 965.

Plaintiffs contend that the Ordinance, as applied, does not withstand intermediate scrutiny because the City did not consider any evidence relating to an SOB's non-SOB activity after 2:00 a.m. *See* Doc. 25, Br., 9–11. This assumes that the City could only form a reasonable belief that an SOB's non-SOB activity was linked to increases in crime with direct evidence in support of such a link. This is not so: "The standard does not require a city to forge an ironclad connection between SOBs and secondary effects or to produce studies examining precisely the same conditions at issue."

*Ass'n of Club Executives*, 83 F.4th at 967. "So long as a city's inferences appear reasonable, [the Court] should not say there is no basis for its conclusion." *Id.* (citations omitted) The Fifth Circuit found that the City considered data that supported the reasonable belief that SOBs' operations after 2:00 a.m. were linked to the secondary effects targeted by the Ordinance. *See id.* at 965–969. From this same data, it is reasonably inferable that that the noxious effects of SOBs might persist even though the nature of the business's operations might change from 1:59 a.m. to 2:00 a.m. Thus, the City could reasonably believe that the enforcement of the Ordinance against an SOB's non-SOB activity would serve its substantial interest. *See id.* at 967; *Renton*, 475 U.S. at 50.

Moreover, contrary to Plaintiffs' assertions, the City *did* consider evidence supporting a link between non-SOB activity and increased crime. To begin, DPD Officer Stephen Bishopp, who analyzed the crime data in connection with the enactment of the Ordinance, testified that the City considered the connection between the prevalence of crime and proximity to SOB-licensed businesses—that is, the City considered evidence supporting a correlation between SOB *licensure* and crime, not a *particular activity* and crime.[15] *See* Doc. 31, Defs.' App'x, 9–11; *id.* at 44–45. More pointedly, however, the City specifically considered data linking non-operational SOBs to increased crime prior to the passage of the Ordinance. *See id.* at 44–51. A non-operational SOB is a business with an SOB license that is either not operating as an SOB or not operating in any capacity—these businesses necessarily do not engage in SOB activity. *See id.* at 45. The data before the City indicated that, from 2019-2021, there was almost a 100% increase in violent crime near non-operational SOBs from hours of 10:00 p.m. to 2:00 a.m. to the hours of 2:00 to 6:00 a.m. *Id.*

---

[15] While it might be reasonable to assume that an SOB-licensee was likely acting pursuant to that license after 2:00 a.m., Plaintiffs have consistently maintained that several businesses with SOB licenses do not engage in SOB activities. *See, e.g.*, Doc. 35, Reply, 4 ("The evidence will show that there are SOB licensees who do not operates as SOBs at any time.").

at 46. In short, the Court cannot say the City lacked evidence supporting reasonable the belief that SOBs' non-SOB activities were linked to the targeted secondary effects of the Ordinance.

Finally, the Ordinance, as applied to non-SOB activity, does not disproportionately restrict speech. As the Fifth Circuit observed in *Ass'n of Club Executives*, the Ordinance "leaves SOBs free to open for twenty hours a day, seven days a week, while also, in the City's reasonable view, curtailing the violent crime and 911 calls with which the City was concerned." 83 F.4th at 969. The result is the same here.

In sum, the Ordinance is designed to serve a substantial government interest and allows for reasonable alternative avenues for communication; this remains true even when applied to non-SOB activity. Accordingly, the Ordinance, as applied to non-SOB activity, likely withstands intermediate scrutiny.

### 3.    *Ultra Vires*

Lastly, Plaintiffs bring state law *ultra vires* claims against the Individual Defendants for exceeding the scope of their authority in enforcing the Ordinance against non-SOB activity. *See* Doc. 27, Am. Compl., ¶ 40. The Court concludes that Plaintiffs are not likely to succeed on the merits of their *ultra vires* claims because they have not shown the Individual Defendants exceeded any authority with respect to Plaintiffs' proposed activities.[16]

---

[16] It appears that the Individual Defendants have not been served with Plaintiffs' Amended Complaint or Application for Preliminary Injunction. Rule 65(a)(1) provides that a "court may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65. However, "Rule 65(a) does not require service of process." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978). Here, two of the Individual Defendants—Polk and Peterson—were present at the preliminary injunction hearing and gave testimony. Moreover, Polk and Peterson were specifically identified as named defendants at the hearing. But it is unclear when they were made aware of the hearing. *See Harris Cnty., v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 326 (5th Cir. 1999) ("[N]otice under Rule 65(a)(1) should comply with Rule 6(d), which requires five days' notice before a hearing on a motion."); *Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. SA-17-CA-808-XR, 2017 WL 4051569, at *3 (W.D. Tex. Sept. 13, 2017) ("Rule 6(d) is no longer in effect, and the current rule, Rule 6(c)(1), provides: A written

Under Texas law, "a suit against a government employee in his official capacity is a suit against his government employer." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011). And, as relevant here, "[c]ities, as political subdivisions of the State, have immunity from suits for damages unless the immunity has been waived." *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018). However, "[e]ven if a governmental entity's immunity has not been waived by the Legislature, a claim may be brought against a governmental official if the official engages in *ultra vires* conduct." *Id.* "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017).

Here, Plaintiffs seem to argue that the Individual Defendants acted outside of their authority to interpret and apply the law by threatening to enforce the Ordinance against Plaintiffs even though Plaintiffs do not intend to engage in SOB activity after 2:00 a.m. Doc. 27, Am. Compl., ¶ 40. The Court looks to the language of the Ordinance to determine the scope of the officers' authority. *City of Port Arthur v. Thomas*, 659 S.W.3d 96, 111 (Tex. App.—Beaumont 2022, no pet.). As previously discussed, the Ordinance unambiguously prohibits SOBs from engaging in

---

motion and notice of the hearing must be served at least 14 days before the time specified for the hearing unless a court order—which a party may, for good cause, apply for ex parte—sets a different time."). In addition, the Court notes that there is nothing in the record indicating that the third Individual Defendant—Garcia—had any notice. Ultimately, the Court need not resolve these potential issues because it denies the request for preliminary injunction on the merits. *See* FED. R. CIV. P. 6 (requiring notice only where the preliminary injunction issues).

any operations after 2:00 a.m., and Plaintiffs are SOBs. *See supra* III.C.1.i. Thus, the Individual Defendants did not exceed the scope of their authority granted by the Ordinance in enforcing the hours of operation requirement against Plaintiffs' post-2:00 a.m. activities since Plaintiffs are SOBs. Accordingly, Plaintiffs are not likely to succeed on the merits of their *ultra vires* claims.

***

Plaintiffs are only entitled to a preliminary injunction upon a showing that they are likely to succeed on the merits of at least one claim. They have failed to carry this burden, and therefore, it is unnecessary to evaluate the remaining three preliminary injunction factors. Accordingly, the Court **DENIES** Plaintiff's Application for Preliminary Injunction.

### IV.

### CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' Application for Preliminary Injunction and **DENIES IN PART** the City's Motion to Dismiss.

SO ORDERED.

SIGNED: May 16, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE